299 So.2d 347 (1974)
Curley GRADNEY
v.
VANCOUVER PLYWOOD CO., INC.
No. 54478.
Supreme Court of Louisiana.
August 30, 1974.
Robert E. Morgan, Baggett, Hawsey, McClain & Morgan, Lake Charles, for plaintiff-applicant.
Merritt B. Chastain, Jr., Smitherman, Smitherman, Lunn & Hussey, Shreveport, for defendant-respondent.
SANDERS, Chief Justice.
The issue in this workmen's compensation suit is whether the employee has a compensable disability. The Court of Appeal rejected the demand. We reverse, reinstating the judgment of the trial court.
On July 19, 1971, Curley Gradney, a laborer, sustained a bilateral hernia in the course of his employment, while straining to bind lumber on a railway car. His employer, Vancouver Plywood Company, Inc., paid him compensation from the date of the accident through April 2, 1972. On that date, Vancouver Plywood terminated *348 compensation, asserting that the corrective surgery provided for the employee had removed his hernia-caused disability. This suit followed.
After trial, the district court rendered judgment in favor of plaintiff, awarding him compensation of $49.00 per week for total and permanent disability during a period not exceeding 500 weeks.
With a divided court, the Court of Appeal reversed the judgment and dismissed plaintiff's suit. Although the court found that the employee was disabled, it held that he had failed to establish a causal relation between the accident and the disability. 287 So.2d 534 (1973).
On application of the plaintiff employee, we granted certiorari to review the judgment of the Court of Appeal. See 291 So. 2d 397 (1974).
Both lower courts found the employee permanently and totally disabled to do work of any reasonable character. See LSA-R.S. 23:1221(2). Although plaintiff was a regular worker before the accident, he has been unable to return to work. We accept the finding of permanent, total disability.
More difficult is the question of whether a causal relation exists between the employment accident and the present disability.
After plaintiff's accident on July 19, 1971, he underwent surgery for the correction of the bilateral hernia. The surgery was performed by Dr. Rodney Landreneau, a general surgeon, on August 9, 1971. Following surgery, the employee began to experience severe pain in the left inguinal region, radiating into the left groin. The employee complained about a reduction in size of his left testicle, but the physician found no reduction. After treatment for prostatitis did not relieve the pain, Dr. Landreneau performed a second operation.
In the second operation, the left inguinal nerve was cleaned, and a small neuroma formation near the hernia repair was excised. The physician found adhesions around the spermatic cord, but discerned no construction of the cord itself. The physician readjusted a nerve to remove it from the scar tissue.
Because of continued complaints of pain in the inguinal region and lower back, the surgeon referred the employee to a urologist, who recommended treatment for prostatitis. After a period of treatment plaintiff was discharged as recovered from the surgical procedures and affected nerve on March 1, 1972.
The urologist ultimately diagnosed the employee's condition as mild prostatitis and either a herniated intervertebral disc or a scar formation on a nerve.
Although discharging the employee, Dr. Landreneau was of the opinion that he had a residual ten percent disability of the left inguinal region. In his testimony at the trial, based on a later examination, he was of the view that the disability had been somewhat reduced. He testified that the employee would experience some pain in his work "enough to slow him down" but not enough to prevent him from continuing to work.
Dr. George P. Schneider, an orthopedic surgeon, examined the employee on August 17, 1972, found no orthopedic problem, but concluded that the employee's residual difficulties were related to the surgery.
Dr. Edward Phillips, an orthopedic surgeon, found no orthopedic problem to prevent plaintiff from returning to work.
Dr. Donald G. Edgerton, a general surgeon, examined plaintiff and found some back pathology but recommended no further surgery.
Dr. John A. Tassin, a general practitioner, examined the employee to determine his eligibility for public welfare benefits. He found him to be disabled for strenuous labor, being of the opinion that he would probably need more surgery. Because of *349 the limited nature of this examination, the parties concede that it is of little assistance.
Dr. W. R. Hargrove, a general practitioner, treated the employee beginning on May 23, 1972. He saw him on numerous occasions. The employee's last visit to his office was on November 12, 1972, the day before the trial.
He found marked tenderness in the regions of the left inguinal ring, the inguinal canal, and lower left portion of the abdomen corresponding to the internal inguinal ring; a definite reduction in size of the left testicle as compared to the right; tenderness and pain on pressure to the left testicle; and tenderness in the left lumbar region and buttocks. He also found a reduction in the average size of the external inguinal ring.
His diagnosis was a construction of the external inguinal ring, with pressure on the spermatic cord. He was of the view that the adhesion-scar tissue problem had recurred after the second operation, causing compression of the spermatic cord.
The testimony of lay witnesses supported plaintiff's own testimony that he had been a good worker before the accident but had been unable to work since then.
Considering the evidence, the trial judge found that "petitioner, as a result of his accident of July 19, 1971, suffers from a condition of his left groin region to the extent that he cannot engage in heavy manual labor without experiencing pain to such an extent that he is disabled."
On the question of causation, the finding of the trial judge must be given great weight. This is true despite the circumstance that the testimony of all physicians except Dr. W. R. Hargrove was received by deposition. See Canter v. Koehring Company, La., 283 So.2d 716 (1973); Ginlee v. Helg, 251 La. 261, 203 So.2d 714 (1967); Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964).
In Canter v. Koehring Company, supra, this Court stated:
"[T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
As in other civil actions, the plaintiff in a workmen's compensation proceeding must establish causation by a preponderance of the evidence. Thus, the testimony, as a whole, must show that more probably than not the employment accident caused the disability. Jordan v. Travelers, 257 La. 995, 245 So.2d 151 (1971); Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (1965). The causal relation may be inferred when there is proof of an accident and an ensuing disability without an intervening cause. Johnson v. Travelers Insurance Co., La., 284 So.2d 888 (1973); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968).
Here, the record reflects that prior to the accident the employee regularly performed manual labor, both in his principal employment and in extra jobs. Following the accident, he has been continuously disabled. Although the medical testimony is conflicting, we are of the opinion that the evidence, as a whole, sustains the trial judge's finding that the present disability *350 has a causal relation with the employment accident. From our review of the record, we discern no adequate reason to disturb that finding.
For the reasons assigned, the judgment of the Court of Appeal is reversed. The judgment of the district court is reinstated and made the judgment of this Court. All costs are assessed against the defendant.
SUMMERS, J., concurs and assigns reasons.
SUMMERS, Justice (concurring).
The rule of law which requires that the finding of the trial judge must be given great weight upon appellate review has not heretofore been applied to testimony received by deposition. Deposition testimony affords no better opportunity to the trial judge than it does the appellate court to evaluate that evidence. Each is faced with a cold record and the demeanor of the witness, upon which the rule of great weight largely rests, is unknown to either court. The majority broadens the application of the rule without reason.
Furthermore, inferring the causal relation when there is proof of an accident and an ensuing disability without an intervening cause is not a rule that can be applied in all cases. Its proper application depends upon the circumstances of each case and it should be so qualified.
I therefore concur in the result only.