HOOD, Judge.
This is a workmen’s compensation suit instituted by Claude Cahanin against Lafayette General Hospital and its insurer, Continental Insurance Company. The trial court rendered judgment in favor of defendants, and plaintiff appealed. We affirm.
Several questions are presented, the principal one being whether plaintiff sustained a disabling injury during the course and scope of his employment.
Plaintiff alleges that he sustained two separate injuries while working as a laborer in the maintenance department of the Lafayette General Hospital. One of those injuries, described as chronic bronchitis, allegedly occurred on June 30, 1973, when plaintiff inhaled some smoke or fumes while burning trash for the hospital. The other injury, an inguinal hernia, is alleged to have been sustained on July 16, 1973, while Cahanin was doing some heavy lifting in the course of his employment. Plaintiff contends that he has been totally disabled since the last mentioned date.
Cahanin was 63 or 64 years of age when the above accidents allegedly occurred. He testified that on July 16,1973, while he was carrying a heavy box down a flight of stairs for his employer, he felt a pain in his groin, and that he immediately told his co-employee, John Lee, and his supervisor, Harold Webb, that he had injured himself. He thereupon arranged for his daughter-in-law to pick him up at the place of his employment and take him to Dr. Charles Chester Martin for treatment. He saw Dr. Martin that day, and he remained under the treatment of that doctor for approximately two years thereafter. He testified that Dr. Martin told him he had bronchitis and a hernia, and that he has not worked for anyone since July 16, 1973.
Plaintiff also testified that immediately prior to the time he sustained the above injury, he occasionally burned trash in an incinerator for the hospital, although it was not a part of his regular duties to do so, and that he sometimes inhaled smoke and fumes when he opened the door of the incinerator. He stated that he had been coughing and had not been feeling well for several days before he first consulted Dr. Martin, and he contends that he developed the bronchitis from inhaling smoke and fumes while burning trash for the hospital.
Dr. Martin died in 1975, before this case was tried. The trial judge, however, admitted in evidence some notes which had been made by the doctor and some reports which he prepared in 1973 and 1974 relating to his findings and treatment of Cahanin. No issue is raised on this appeal as to the admissibility of those reports. The earliest such document is a note or memorandum, dated August 20,1973, signed by Dr. Martin and addressed to the Assistant Administra *438 tor of the hospital where plaintiff worked, advising that plaintiff “has had a bronchitis and should refrain from inhaling smoke for the next 6 weeks until his lungs are clear.” There is no mention of a hernia in that note, and we interpret the message to mean that plaintiff could continue to work, but that he should avoid inhaling smoke.
Plaintiff engaged an attorney, and on April 12, 1974, Dr. Martin submitted a formal report to that attorney, which reads as follows:
“Mr. Claude Cahanin was first seen by me on July 16, 1973, with a history of generalized aches and pains, difficulty with breathing, persistent cough. A physical examination revealed an elevated blood glucose of 120 mgm% and a chronic bronchitis. A history revealed the patient had been working at Lafayette General burning trash and this, he states, made his cough worse. Also a left inguinal hernia was discovered which the patient stated he had no knowledge. No history of work injury was given at this time. On a subsequent visit, he stated, he and another employee at Lafayette General were moving a desk and he felt a pain in his left side, exact date could not be determined. He refused surgery for this hernia.
“He is still being treated for chronic bronchitis and is progressing satisfactorily.
“In summary this patient has the following:
“(1) Latent Diabetes Mellitus
“(2) Left Inguinal Hernia
“(3) Chronic Bronchitis.” (Emphasis added).
Two other reports were submitted by Dr. Martin, one on January 27 and the other on February 6, 1975. In both of those reports the doctor stated that Cahanin’s bronchitis had improved to the extent that he could withstand surgery, and that he was willing at those times to have his hernia repaired.
Dr. Edward J. LeBlanc, Jr. examined plaintiff initially on November 15, 1976. He testified that the only pertinent physical finding he made was a “large scrotal hernia in the right inguinal area,” or an “indirect inguinal hernia.” Arrangements were made for plaintiff to undergo surgery, and Dr. LeBlanc thereupon performed the surgical procedure necessary to repair the hernia on November 18, 1976, that being three years and four months after the accident occurred. The operation was successful. Plaintiff was released from the hospital on November 24, 1976, and he was discharged by his treating physician on January 10, 1977.
Dr. LeBlanc explained that plaintiff probably had “a preformed sac or preformed disposition to a hernia, almost from the time of birth,” and that exertion, exercise or straining precipitated the opening of this sac and filling it with hernia contents. With reference to plaintiffs hernia, he stated:
“ . . . he had an indirect hernia which had been there for some time and, of course, it had gotten to be where it was incapacitating because the contents of the hernia descended into the scrotum.”
******
“Now, on him, he had been having this for a period of years. And sometimes someone comes in and we know exactly what precipitated the hernia; but in his case, there is no way of knowing what precipitated the hernia.”
Dr. LeBlanc testified that Cahanin told him, in giving a history of his condition, that “he simply noted a swelling in the right groin some years before,” and that “that swelling had slowly enlarged, and that now the patient had tenderness associated with that swelling.”
The trial judge, after considering all of the evidence and noting that there were “different versions as to what plaintiff was doing at the time he sustained this alleged hernia,” determined that plaintiff was not entitled to recover. We gather from the trial judge’s reasons for judgment that he concluded that plaintiff had failed to show a causal connection between the accident and the hernia which eventually was re *439 paired in 1976. The trial judge also found no evidence of “causation” of the bronchitis. He thus rendered judgment in favor of defendants. Plaintiff appealed, and it is that appeal which is before us now.
Applicable here is the rule that in a workmen’s compensation case, as in other civil actions, the plaintiff must establish causation by a preponderance of the evidence. The testimony, as a whole, must show that more probably than not the accident caused the disability. Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La.1974).
In order for a claimant to recover workmen’s compensation benefits when the claim is based on an inguinal hernia, he must establish by a preponderance of the evidence that: (1) The hernia resulted from injury by accident arising out of and in the course and scope of the employment; (2) the accident was reported promptly to the employer; and (3) the employee was attended by a licensed physician within 30 days thereafter. LSA-R.S. 23:1221(4)(q)Marmolejo v. Fairmont-Roosevelt Hotel Company, Inc., 301 So.2d 375 (La.App. 4 Cir. 1974).
The factual findings of the trial court are entitled to great weight, particularly when they involve a determination of the credibility of witnesses, and his findings will not be disturbed by the reviewing court unless found to be clearly erroneous.
In the instant suit, some of the testimony or statements are conflicting, and it is difficult to rationalize or accept parts of the evidence presented.
According to Dr. Martin’s notes, for instance, that doctor found that plaintiff had a left inguinal hernia on July 16, 1973, whereas more than three years later Dr. LeBlanc found that he had only a right inguinal hernia. Dr. Martin reported that sometime after the above date plaintiff stated that while he was moving a desk for the hospital he felt a pain in his left side. At the trial plaintiff testified that while he was carrying a box he felt a pain in his right side. He pointed out to the court that the pain was localized two or three inches to the right of the mid-line of the body and about four inches below the belt line.
Dr. Martin also reported that plaintiff had “no knowledge” of the hernia which was found on July 16, 1973, and that he gave no history of a work injury at that time. We believe that plaintiff would have mentioned the pain in his groin, and would have given a history of a work injury, if he, in fact, had sustained a hernia, or had aggravated and made symptomatic a pre-ex-isting hernia, immediately before he went to the doctor. That conclusion is justified here especially, we think, because plaintiff said he rushed to the doctor at that time primarily for treatment of the pain in his groin. Cahanin indicated in his testimony that the pain which he experienced in his side and groin while carrying a box for his employer was severe enough that he was unable to drive his own car and had to have someone else take him to the doctor’s office.
We are inclined to accept Dr. LeBlanc’s testimony that plaintiff’s indirect inguinal hernia developed or became manifest gradually over a relatively long period of time. The evidence does not convince us, and it apparently did not convince the trial judge, that plaintiff suffered a sudden pain in his groin shortly before he consulted Dr. Martin on July 16, 1973, or that he went to the doctor on that date for treatment of a pain in that part of his body. We base that decision largely on the fact that Cahanin did not know that he had a hernia when he saw the doctor and that he did not say anything to Dr. Martin on that visit about having had an accident or experiencing pain while carrying a heavy object in the course of his employment. Our conclusion as to that factual issue is supported to some extent, we think, by the fact that in the note which Dr. Martin wrote to plaintiff’s employer on August 20, 1973, he mentioned only that plaintiff had a bronchitis. He made no mention of a hernia in that note.
As already noted, plaintiff told Dr. Martin sometime after his first visit to that doctor that he was moving a desk for his employer when he sustained the hernia. *440 He apparently gave that same information to his attorney, because plaintiff’s attorney stated in a letter to the insurance adjuster on January 29,1974, that Cahanin was moving a heavy desk when he was injured. Contrary to those earlier statements, plaintiff testified at the trial, and also in a deposition taken before the trial, that he was moving some boxes for his employer that day, that he had carried three boxes down the stairs that morning and was in the process of carrying the fourth box when he experienced pain in his side and groin.
Plaintiff’s co-employee, Lee, testified that plaintiff told him that he had hurt himself while picking up or lifting a box in the course of his employment. The witness did not remember when plaintiff gave him that information, but he believed that Ca-hanin continued to work the rest of the day and told Lee about the alleged accident while working the next day. Lee stated that plaintiff did not mention the nature of the injury or the part of his body which was affected by it.
Plaintiff testified that he immediately reported the accident and injury to his groin to his supervisor, Webb, and that he reported his injury again to Webb later the same day. Webb stated, however, that he had no recollection of discussing such an accident or injury with plaintiff at any time, and that he would have made out a report of an accident if one had been reported to him by plaintiff. Webb conceded that plaintiff told him on July 16 that he was “sick,” but he stated that he was under the impression that Cahanin was talking about his bronchitis. He is certain that plaintiff mentioned nothing about experiencing pain in * his groin or side while lifting or carrying a box.
Although plaintiff contends that he did not return to work for the defendant hospital after July 16, 1973, the payroll records and other evidence establishes that he worked four hours on the above date, that he was on sick leave for nine working days thereafter, and that he returned to work on July 30. He worked five days during the week beginning July 30 and four days during the week beginning August 6. He was on sick leave from August 10 until he formally resigned from his employment on September 4, 1973.
It is obvious from the above that there are some substantial conflicts in the evidence. The trial judge apparently did not accept plaintiff’s version of the facts as given at the trial. After considering all of the evidence, we agree with the trial judge that plaintiff failed to establish that the disabling hernia which was found and repaired by Dr. LeBlanc in 1976 resulted from a work connected accident.
With reference to plaintiff’s contention that he sustained an injury resulting in bronchitis, the evidence does not show that he was ever disabled from work because of that condition, or that his bronchitis was caused by inhaling smoke or fumes from the hospital trash burner.
We conclude that there was no error in the judgment of the trial court which rejected plaintiff’s demands. The judgment of the trial court thus must be affirmed.
For the reasons assigned, the judgment appealed from is affirmed. The cost of this appeal are assessed to plaintiff-appellant.
AFFIRMED.