CUTRER, Judge,
dissenting.
MANIFEST ERROR RULE
The Honorable Ted R. Broyles decided this case from the record which was prepared following the death of the Honorable Stuart S. Kay who tried the case. Under these circumstances the rule of according great weight to the findings of the trial judge would not apply since the successor judge who rendered the decision had no opportunity to hear or observe any witnesses. Smith v. West Calcasieu-Cameron Hospital, 251 So.2d 810 (La.App. 3rd Cir. 1971); Moore v. Travelers Indemnity Company, 352 So.2d 270 (La.App. 2nd Cir. 1977); Allstate Insurance Company v. Shemwell, 142 So.2d 866 (La.App. 2nd Cir. 1962). The majority opinion discusses the case of Gradney v. Vancouver Plywood Company, Inc., 299 So.2d 347 (La.1974). The majority opinion states that Gradney seems to indicate that the manifest error rule would apply to this case, but does not decide the point as they generally agree with the conclusions of the trial judge. The circumstances of the case at hand can be distinguished from that presented in Gradney v. Vancouver Plywood Co., Inc., supra. In Gradney the trial court heard the lay testimony plus one physician, the remainder of the medical being by the depositions of three doctors. The Supreme Court stated that the finding of the trial judge in that case must be given great weight. In the case at hand, the trial judge had no opportunity to hear any of the testimony, and I feel the factual conclusions of the trial judge should not carry the usual weight of the manifest error rule.
VALUE OF THE LAND TAKEN
The majority reaches the conclusion that this is commercial property and values the 1.06 acres of land at $24,721.00. They accepted the testimony of Mr. T. J. Stephens who testified on behalf of the owner. Em- *892 pbasis was placed upon the fact that situated in the area along Highway 171 was the State Police Headquarters, a Chamber of Commerce building, and a cemetery. These buildings should not be classified as commercial within the usual sense of that word in that they are not used in a profit-making venture. These were improvements that served a special purpose.
The better reasoning in this case is reflected by the testimony of Mr. Perry E. Futrell, Jr., who testified on behalf of the State. Mr. Futrell testified that he considered the highest and best use of the property to be residential with some commercial potentiality. He pointed out that the City of Leesville has developed commercially and residentially to the south, toward New Llano, Fort Polk, and along Highway 8 toward Texas. He felt that the Fort Polk location had influenced this pattern of development. This pattern of highway commercial development had not extended north of the City of Leesville at the time of the taking. He felt the police headquarters and Chamber of Commerce building located in the area were for special purposes and could not be classified as commercial in the ordinary sense of the word. He also explained that the residential growth north of the city had been slow. To have business establishments in an area, there must exist support for same. He stated that the lack of residential growth north of the city would explain the lack of commercial interest in the area of the subject property. This explanation by Mr. Futrell is buttressed by the fact that one of the principal comparables used by him is a sale of property a few hundred feet north of the subject property. This sale was made in September, 1971, three years before the taking, by Boise Southern Company to Leesville Lumber Co., Inc., for a price of $2,500.00 an acre. This property had a frontage of 1300 feet along Highway 171. Shortly after the purchase, a brick home was constructed upon the property. This sale was consummated by two business establishments and used for residential purposes. Mr. Futrell utilized other comparables in the area of the subject property, but not along Highway 171, which reflected a range of values from $2,000 per acre to $4,386 per acre. Through adjustment, Mr. Futrell concluded that the indicated market value of the subject property was $6,000 per acre or $6,360 for the 1.06 acres taken. To this figure he added $1,200.00 as a contributory value due to the superior landscaping, reaching a total value of the land taken to be $7,560.00.
In the case of State, Through Department of Highways v. Kennedy, 193 So.2d 848 (La.App. 1st Cir. 1966), writ refused 250 La. 273, 195 So.2d 149 (La.1967), the law of expropriation was set out as follows:
“. . . Furthermore, when property is expropriated for highway purposes the owner who claims the value thereof exceeds the estimate of its value made by the Department of Highways and deposited in the registry of the court upon institution of the expropriation proceeding, bears the burden of proving his claim and must establish by convincing evidence that its value is greater than the appraisal of the expropriating agency. LSA-R.S. 48:453. State of Louisiana, Through the Department of Highways v. Kemp, et al., La.App., 141 So.2d 487.
“As established by the jurisprudence of this state concerning expropriation proceedings, the testimony of each qualified expert in the determination of market value of expropriated property is to be given effect if and when it appears well grounded from the standpoint of sincerity and good reasoning. But where the expert's opinion is not predicated upon sound reasoning, such as, the consideration of comparables which are not in fact similar or located in the vicinity of the expropriated property, or the consideration of a land use speculative and conjectural in nature, or the failure to take other factors and circumstances into consideration, the general rule above stated does not apply and effect will be given only to the opinions of those experts whose testimony is grounded on the best reasoning. Greater Baton Rouge Consolidated Sewer District v. Nelson, La.App., 144 So.2d 186.” (Emphasis supplied)
*893 As I examine the reasoning and explanations of the experts and the facts and circumstances surrounding the property in question, I conclude that the property in question must be classified as residential for appraisal purposes. I do not feel that this highway frontage north of Leesville has developed into a commercial classification as of the time of the taking. As point-ed out by Mr. Futrell, there is some potentiality in the direction of commercial, but there is not a basis upon which it can be reasonably classified as commercial as of the time of the taking in 1974. I say this especially in view of the Boise Southern Company to Leesville Lumber Co., Inc. comparable previously discussed. Furthermore, whether we classify this as commercial or residential, the record does not justify the valuation of $24,721.00 for this 1.06 acres of highway frontage. Mr. Stephens, the expert called by the owner, admitted on cross-examination that he was unable to find any sales north of the City of Leesville in the area of the subject property that would exceed $5,000 per acre. There were no comparables cited by either expert in the immediate area that would justify the conclusion reached by the majority. I would accept Mr. Futrell’s appraisal of $7,560.00 for the value of the property taken.
VALUE OF IMPROVEMENTS
Mr. Futrell, having concluded that the property was classified as residential, estimated the replacement value of the improvements at $34,300.00. Mr. Stephens estimated the replacement value of the improvements at $34,940.00.
After concluding that the property should be classified as commercial, the majority then accepted the replacement value placed upon the property by Mr. Futrell of $34,-300.00 less 28%, fixing a value of the improvements at $24,696.00.
Mr. Futrell testified that if the property was classified as commercial it would have no contributory value since the residence could not be utilized for a commercial venture. Mr. Stephens, when questioned about the contributory value of the property, testified as follows:
“Q. With respect to your appraisal of the improvements, most particularly the home located there on Mr. Mclnnis’ property, you have given a highest and best use of commercial to the land. What does the house contribute to that property as a commercial entity?
“A. Well, there are several ways to look at it. There’s possibility the house could be utilized as some commercial venture. Don’t know. But the house was there. He had spent his money for it. It had a value because it had cost somebody to build the house and, therefore, you had to consider it — its actual value.”

“Q. But the point I’m making is that you have given the land a high value as commercial property and you have treated the residence as a residential piece of property, and it sits on top of the land. You don’t find that inconsistent in any fashion whatsoever?
“A. I find that there was certain improvements on there, regardless of what it was being used for, it was still improvements that somebody paid for.”
Mr. Stephens did not place a contributory value on the property which he classified as commercial. He, in substance, stated that in his expert opinion the owner would be entitled to a value of $34,940.00 for the improvements because the owner paid for them and should be reimbursed. This is replacement value and not contributory value. In the case of State, Department of Highways v. Goldberg, 223 So.2d 174 (La.App. 3rd Cir. 1969), cited by the majority, the court held:
“. . . Consideration of the value of such buildings and improvements is limited to the extent only that they enhance the value of the land.”
Without the necessary expert testimony as to the actual contributory value of the *894 improvements, I cannot agree with the majority valuation of improvements as being a contributory value.
In conclusion, I would classify this property as residential and would reduce the award for the value of the land taken from $24,721.00 to $7,560.00, affirm the award of $34,300.00 for replacement value of improvements, and reduce the severance damage award from $9,124.00 to $6,354.00.
For these reasons, I respectfully dissent.