CUTRER, Judge.
This is a workmen’s compensation suit in which the plaintiff, Earl T. Jones, alleges that he injured his back on June 16, 1977, and again on August 16,1978, and that as a result of these injuries he is totally disabled. He was employed by the Natchitoches Parish Police Jury as a truck driver at the time of both alleged accidents.
The first accident occurred when the truck which the plaintiff was driving for the Police Jury overturned. He was hospitalized for two weeks with injuries, including abrasions, lacerations and pain in his back and neck. He returned to work with the Police Jury in January 1978. Plaintiff alleges that the second accident occurred when he was straining to close the tailgate on his truck after dumping a load.
At the time of the 1977 accident the Police Jury’s workmen’s compensation carrier was Travelers Insurance Company (Travelers), while Liberty Mutual Insurance Company (Liberty Mutual) was the Police Jury’s compensation carrier at the time of the second alleged accident.
The question then arises as to whether the first accident or second accident, or both, were a contributing cause of the plaintiff’s disability.
Following the 1978 accident Liberty Mutual began compensation payments, but terminated these payments on December 26, 1978.
The plaintiff initially brought his suit solely against Liberty Mutual. Liberty Mutual then filed exceptions of prescription, no right and no cause of action and a third party demand against Travelers. The plaintiff amended his petition to include Travelers as a defendant. Travelers then also filed an exception of prescription.
The trial judge overruled the exceptions and found that the plaintiff was totally and permanently disabled due to the August 16, 1978 injury. He also found that Liberty Mutual had acted arbitrarily and capricious *289 ly in terminating compensation payments. For these reasons he granted judgment in favor of plaintiff against Liberty Mutual for total and permanent disability benefits, medical expenses and penalties and attorney’s fees. He dismissed the plaintiff’s claim, as well as Liberty Mutual’s third party demand, against Travelers.
Liberty Mutual and the plaintiff appealed. Liberty Mutual argues that the trial court erred in finding that the plaintiff recovered from the June 16, 1977 accident, and that the plaintiff was actually disabled as a result of the earlier accident. Liberty Mutual further contends that there was no work related accident on August 16, 1978 and, finally, argues that they were not arbitrary or capricious in terminating compensation benefits. The plaintiff simply contends that the earlier accident was a contributing cause of his disability. Travelers did not appeal or answer the appeal and stands by the facts as found by the trial court.
Thus, three issues are raised on appeal:
(1) Whether there was a work-related accident on August 16, 1978;
(2) If so, whether that accident or the June 16, 1977 accident, or both, caused the plaintiff’s disability; and
(3) Whether the insurers acted arbitrarily or capriciously in terminating compensation payments.
These issues turn on the facts as found by the trial court. In the case of Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979), the Louisiana Supreme Court set forth the standard of review to be applied by an appellate court in reviewing the factual findings of the trial court as follows:
“On appellate review, the trial court’s factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter’s reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings, unless clearly wrong. The reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.
“See: Cadiere v. West Gibson Products Company, 364 So.2d 998 (La.1978); Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La.1974). See also Canter v. Koehring [Co.], 283 So.2d 716 (La.1973).
“As noted by these decisions, the reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
With this standard in mind we will examine the issues presented on this appeal.
The trial court was not clearly wrong in finding that plaintiff suffered a work-related injury on August 16, 1978. The plaintiff testified that on August 15, 1978, he was driving a truck, hauling loads of dirt and, after dumping a load of dirt, he had trouble closing the tailgate on his truck. He was pushing on the tailgate when the pain struck him and he fell. The plaintiff has not worked since this incident.
The plaintiff’s testimony was corroborated by Terry Kilgore. Kilgore was operating a backhoe at the location on Sisson Road to which the plaintiff was hauling dirt. He stated that he saw the plaintiff attempting to close the tailgate of the truck and, after closing same, saw the plaintiff fall. He took plaintiff to the shop and other persons then transported plaintiff to the hospital.
Dr. Joseph Thomas testified that his records reflected that the plaintiff related to him the tailgate incident of August 16th. However, the hospital records, taken by Dr. Thomas and dictated by him the day after the plaintiff’s arrival at the emergency room on August 16th, states that the plaintiff injured his back when he slipped and *290 fell at home. He stated that the plaintiff had related the tailgate incident to him and that it may have been an oversight on his part that the tailgate incident did not appear in the hospital records.
While there is some conflict in the testimony as to the occurrence of the August 16, 1978 accident, the record supports the trial court’s finding that the August 16th accident and injury was worked related.
We next address ourselves to whether plaintiff’s present disability resulted from the accident which occurred in June 1977, whether same is due solely to the incident of August 1978, or whether both of those accidents contributed to the disability.
As stated previously, the trial judge found that the plaintiff was totally disabled and the disability was caused solely by the accident of August 16, 1978.
Dr. Joseph Thomas, a general practitioner, had treated plaintiff for a number of years prior to the 1977 accident. The plaintiff had a degenerative back condition which had pre-existed either of the accidents in question. Dr. Thomas testified that following the 1977 accident he saw plaintiff several times between the date of the accident and the date plaintiff returned to work. The plaintiff’s principal complaints were neck and back problems. After treating plaintiff from June 16, 1977, the date of the first accident, until January 1978, Dr. Thomas was of the opinion that by January 1978, plaintiff had returned to his pre-accident condition and was able to return to his work as a truck driver.
In this regard, Dr. Thomas testified as follows:
“Q. We go up then to 1977, when he had a truck accident, in which he suffered injury again, and recovered so that you could return him to work January 23rd, 1978, about in the same condition he was before this accident happened, wasn’t he?
“A. Yes.
“Q. Now, we go forward from there to this accident. Mr. Erwin is not sure that we have a date established. And I don’t know if we do or not. But, if I present you a hypothet that there was another episode of an accident and injury August 16, 1978, and you accept that as a hypothet, would .... this pain disabled him again, is that correct?
“A. Yes, sir.
“Q. And from that .... August 16, or whatever date we establish, if it’s, hypothetically, August 16, 1978, he has not recovered from that episode sufficiently for you to ever put him back, to work or recommend he go back to work?
“A. No, sir.
“Q. But, in all other instances, you did allow him to go back to work after a period of time for some recovery?
“A. That’s right.
“Q. But, from the August 16, 1978, you have never authorized him or, in your opinion, he should not be authorized to return to work.
“A. That’s right.
“Q. At this point, then, is it your medical opinion that Mr. Jones is disabled in connection with the hypothetical August 16, 1978 accident?
“A. Yes, sir.”
During the time that Dr. Thomas was seeing plaintiff for the June 1977 accident, plaintiff was also being seen by Dr. R. E. Dean, an orthopedic surgeon. Dr. Thomas had referred plaintiff to Dr. Dean. Dr. Dean testified that when he first saw plaintiff on September 23, 1977, plaintiff was complaining of neck problems. He again saw plaintiff on October 19, 1977 for complaints of back pain. Dr. Dean was of the opinion that plaintiff had a lumbar sprain with a degenerative lumbosacral disc. Plaintiff was given medication and bedrest was recommended. This physician saw plaintiff on November 2 and 29, 1977 and on January 9, 1978. On the latter date, Dr. Dean was of the opinion that plaintiff could return to his duties as a truck driver.
After the second accident of August 1978, Dr. Dean saw plaintiff during the months of September and October for back pain. He prescribed medication and a back brace. Plaintiff was examined by Dr. Dean in January 1979 and January 1980. On the latter *291 date Dr. Dean felt that plaintiff was disabled to the extent that he could do only light work. Plaintiff could do no work that would require frequent bending. The doctor stated that plaintiff had a disability secondary to a degenerative disc disease which could be caused or aggravated by injury.
The plaintiff testified that he returned to work in January 1978, after the first accident, as a truck driver. He stated that he was having some pain for which he took medication. The payroll records of the Police Jury show that plaintiff worked regularly from January 1978 until the second accident in August 1978. He took nine days sick leave during this seven month period.
To correctly evaluate the testimony, the entire history of the plaintiff’s back problems must be borne in mind. The injuries complained of are superimposed on the degenerative condition of plaintiff’s spine. We note that he was generally successful in carrying out his duties for seven months following the first accident. Dr. Thomas’ testimony, which was corroborated by Dr. Dean, reflects that plaintiff was in the same condition when he returned to work in January 1978 as he had been prior to the June 1977 accident. There is no dispute that plaintiff has been totally disabled from performing his duties as a truck driver after the second accident of August 16, 1978. Given these facts, we find that the trial court was not manifestly erroneous in finding that the June 1977 accident did not contribute to the plaintiff’s present disability and that such disability is due to the August 16, 1978 accident.
Finally we turn to the question of penalties and attorney’s fees. Liberty Mutual relies on medical reports from Dr. Dean to justify their decision to terminate compensation payments. Liberty Mutual contends that those reports show that it was Dr. Dean’s opinion, prior to the termination of benefits, that the plaintiff could return to work as a truck driver without limitation.
Dr. Dean’s last report, prior to termination of compensation payments, is dated October 30, 1978. That report does state: “He is to return back to work . . .. ” However, that statement should be taken in context. Dr. Dean’s report of October 30th is as follows:
“At this time, patient still has some back pain. His Williams back brace seems to be doing well with him. Occasionally, he will have pain down his right leg. He has been on some aspirin or Bufferin at times for his pain.
“On examination, the Williams back brace seems to immobilize the lower lumbar spine well. There is some pain on motion. Straight leg raising causes pain on the right, but mainly some back pain, and some pain into his right leg. The reflexes show no abnormalities and sometimes he has slight sensory changes, but none at the present time. No motor dis-function at this time.
“X-ray examinations of the lumbar spine was repeated at this time which shows the narrowing in the lower lumbar spine, especially at the L5-S1 disc space and some degree at L4.
“I feel that this patient has a definite degenerative lower lumbar spine. He has responded to his Williams back brace. I do not feel that surgery is particularly indicated at this time. He is to try to return back to his work, wearing his back brace. I feel he would have some difficulties doing some heavy lifting and frequent bending. Possibly, he can perform some type of work or job at this time. He is to return back to work, but I would like to see him back in one month.”
The testimony at trial revealed that frequent bending was required in plaintiff’s job as a truck driver since the bed of the truck had to be shovelled clean following the dumping of each load of dirt. In the case of Ashworth v. Elton Pickering, Inc., 361 So.2d 940 (La.App. 3rd Cir. 1978), writ den., 362 So.2d 1119 (La.1978), this court held that the insurer acted capriciously in completely terminating benefits where a medical report indicated only that the claimant could return to light work. Here the plaintiff could not perform his former duties. A complete termination of benefits was not justified.
*292 Liberty Mutual also argues that penalties and attorney’s fees should not be granted since there was a dispute as to which accident caused the disability. A dispute between the insurers as to which one owes compensation benefits is not justifiable grounds for withholding these benefits. Joyner v. Houston General Insurance Co., 368 So.2d 1149 (La.App. 3rd Cir. 1979).
For the above reasons the judgment of the trial court is affirmed. Costs of this appeal shall be paid by defendant-appellant, Liberty Mutual Insurance Company.
AFFIRMED.