CUTRER, Judge.
Robert Devillier, Sr., brought suit to recover workmen’s compensation resulting from a back injury incurred while he was roughnecking on a rig operated by N.L. Industries, Inc. From a trial judgment awarding plaintiff disability “until further order” [1] of the court, attorney’s fees and penalties, defendant appeals.
The issues presented on appeal are as follow:
(1) Whether the trial court erred in finding that plaintiff’s injury occurred in the course and scope of his employment with defendant;
(2) Whether the trial court erred in its conclusion that plaintiff was disabled and entitled to compensation benefits; and
(3) Whether the trial court erred in assessing attorney’s fees and penalties against defendant for its decision to discontinue compensation benefits to plaintiff.
For the reasons which follow, we affirm in part and reverse in part.
The plaintiff was working as a roughneck for the defendant in July 1981. Defendant had employed plaintiff on an intermittent basis for approximately three years; he had, however, worked continuously with defendant for approximately one year prior to his injury. On or about Saturday, July 18,1981, plaintiff was working on a rig near Lake Charles, Louisiana. While manually pulling a heavy section of pipe from the pipe rack up into the Vee door, plaintiff began experiencing pain in the lower left section of his back and leg. Although he completed working his twelve hour shift, the plaintiff complained of his *1277 pain that evening to the tool pusher, John Wyble. Plaintiff also worked the next day, Sunday, in pain, but on Monday, due to an increase in pain, he could not continue working. Wyble took the plaintiff to the Lake Charles Memorial Hospital, where the emergency room physician diagnosed plaintiffs injury as being an “acute sacroiliac strain” and gave plaintiff prescriptions for medication.
Plaintiff worked a tour of seven days on and seven days off, and his shift ended on Monday, so he returned to his home in Opelousas after the hospital visit. The following Monday, one day prior to his scheduled return to work, the plaintiff went to the Opelousas General Hospital to be examined before returning to his manual labor. There he was diagnosed as having sciatica and advised to return to work if he felt that he could.[2] Plaintiff returned to his job on Tuesday and worked the evening shift in pain. This was plaintiffs last day to work for defendant. Due to the pain in his back, plaintiff again went to the hospital in Lake Charles where he was advised to see a specialist. The specialist, Dr. David Drez, Jr., examined plaintiff the same day and gave a diagnosis of lumbar muscular strain. Dr. Drez referred plaintiff to Dr. Frazer Gaar, an orthopedic surgeon in Opelousas, and an appointment was made for Monday, August 3rd. Plaintiff resided near Opelousas.
In the meantime, the plaintiff went to see Dr. Seldon Deshotel on July 30th. Plaintiff was given medication for his pain by Dr. Deshotel who called Dr. Gaar and persuaded him to see plaintiff the following day. Dr. Gaar examined the plaintiff on July 31st and admitted him into the local hospital for treatment. Against Dr. Gaar’s advice, plaintiff left the hospital after three days to return home.
On August 10, 1981, Dr. Gaar diagnosed plaintiff as having “symptomatic spondylo-lysis [defective vertebrae] with lumbar strain.” In order to better determine the extent of plaintiffs injury, Dr. Gaar ordered that tomograms be taken of the plaintiffs lower back. The tomograms were twice attempted between August 6th and 24th, but they were not satisfactorily completed because, according to the plaintiffs testimony at trial, due to pain, he could not remain in one position long enough for the tomogram tests to be completed.
After bi-weekly trips to Dr. Gaar, and the receipt of therapy, plaintiff was discharged by Dr. Gaar on September 9, 1981. At that time Dr. Gaar felt that the initial lumbar strain was resolved, although the spondylolysis defect remained. The plaintiff was still complaining of pain and weakness in his left leg, and he did not feel he could return to the manual labor required of a roughneck. Dr. Gaar stated that this might “very well be true,” and he suggested that plaintiff “seek a lighter type occupation.”
After plaintiff was discharged from Dr. Gaar’s care, defendant asked him if he wished to see another physician. The plaintiff indicated that he did and, on September 29, 1981, was sent to Dr. Fred Webre, an orthopedist who limits his practice to evaluations and recommendations. However, when Dr. Webre refused to reveal his examinations’s findings to plaintiff, plaintiff employed an attorney to assist him.
Dr. Webre felt that plaintiff had fully recovered from his injury and could return to work. He also felt that, if plaintiff returned to his roughnecking, the latter might suffer low back pain, but not of an “incapacitating nature.” Dr. Webre stated that he could not explain plaintiff’s back pain unless it could be plaintiff’s overweight as he was 5 feet 6 inches tall and weighed 229 pounds.
On October 7th, plaintiff was notified by defendant that, pursuant to Dr. Gaar’s report, they would no longer pay his compensation. Accordingly, no further compensation was paid plaintiff.
*1278 On October 12, 1981, plaintiff was examined by Dr. E.K. Ventre, a general practitioner in Opelousas. Dr. Ventre opined that the plaintiff had “strongly suggestive evidence of injury to the lumbar spine and possible nerve root involvement.” He explained that this meant a disc injury. He was of the opinion that the plaintiff could not return to his duties. He recommended further diagnostic studies be performed.
Plaintiff next sought treatment from Dr. Stuart Phillips, an orthopedic surgeon in New Orleans. Dr. Phillips first examined plaintiff on October 29, 1981. It was Dr. Phillips opinion that plaintiff, in addition to spondylolisthesis, had evidence of a nerve injury at a higher level, possibly a ruptured disc at the L3-4 level, since this level supplied the quadriceps muscle which appeared inactive because of the atrophy detected. Dr. Phillips stated that, in order to insure the exact cause of plaintiffs problems, a complete diagnostic workup should be conducted, including tomograms and myelograms; he further said that the patient was totally disabled from performing manual labor.
Plaintiff was seen again on December 9, 1981, and May 20, 1982; by the latter date Dr. Phillips observed that the plaintiffs symptoms had increased. He recommended that a CAT scan or myelogram be performed. Dr. Phillips stated that, as of May 20, 1982, plaintiff was totally disabled from occupations requiring “repetitive lifting, bending and stooping.”
Between plaintiffs visits to Dr. Phillips, he was seen once more on February 19, 1982 by Dr. Webre. Noting the plaintiffs continued complaints of pain, Dr. Webre’s report was consistent with his September 29th examination, except he noted plaintiffs diminished sensation on the back of his left foot. Observing that the plaintiff did have some mechanical problem but detecting no evidence of nerve root impingement in the lower extremities, Dr. Webre concluded that plaintiff had “no objective evidence of impairment to function of his back that would prevent him from returning to work.”
At the request of defendant on August 2, 1982, plaintiff saw Dr. E.J. Dabezies, a professor of orthopedics at the L.S.U. Medical Center in New Orleans. Dr. Da-bezies’ examination revealed no abnormalities other than a depressed left patella tendon reflex. He could detect no objective evidence of a ruptured disc, but suggested a CAT scan to resolve the conflict of diagnosis.
Dr. Phillips examined plaintiff on August 30, 1982, three days prior to the day of trial. By deposition he said that plaintiffs condition had remained unchanged and that surgery would probably be required before plaintiff could return to even a sedentary job.
The appropriate standard of review to be applied by the appellate court in reviewing the trial court’s finding of fact is set forth in the case of Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979):
“ ‘On appellate review, the trial court’s factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter’s reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings, unless clearly wrong. The reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.

“ ‘See: Cadiere v. West Gibson Products Company, 364 So.2d 998 (La.1978); Aleman v. Lionel F. Favret Co., Inc., 349 So. 2d 262 (La.1977); Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La.1974). See also Canter v. Koehring [Co.], 283 So.2d 716 (La.1973).

“ ‘As noted by these decisions, the reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold *1279 record), but also upon the proper allocation of trial and appellate functions between the respective courts.’ ”
With these standards in mind we examine the issues herein.
WHETHER PLAINTIFF WAS INJURED IN THE COURSE AND SCOPE OF HIS EMPLOYMENT
The defendant contends that plaintiffs account of his injury was not supported by the testimony of his co-workers. Additionally, defendant alleges that the histories of plaintiffs injury, as recorded by the various examining physicians, contained inconsistencies and does not support the trial court’s finding that the plaintiff was injured while acting in the course and scope of his employment. We disagree.
Addressing defendant’s allegations of inconsistencies, the trial court noted that there was much testimony supporting plaintiff’s account that his injury occurred while he was handling the sections of pipe on defendant’s rig. Our careful review of the record supports this finding. We have previously set forth the circumstances under which this accident occurred; the fact that plaintiff reported the accident to his superior the same day and the subsequent actions of the tool pusher in assisting plaintiff. Also, the histories of the various doctors are consistent as to how the accident happened with some variation as to the exact date; whether July 19th or July 20th. The plaintiff’s testimony at trial was unequivocal and was not made questionable by a purported discrepancy.
In sum, the trial court’s finding that plaintiff was injured while working for defendant is fully supported by the evidence.
DISABILITY
In his reasons for judgment the trial court, after reviewing the medical evidence, concluded as follows:

“The Court concludes that the plaintiff was originally hurt; and, cannot now return to the same work. The two plaintiff doctors say, in their opinion, there is a disc. One defense doctor says he is cured, but cannot or should not return to the same work. The other defense doctor says he thinks the man is fully recovered, but also wants a CT scan and/or myelogram. (The latter does say he has his opinion of no disability, but that tests are necessary, not to confirm his diagnosis, but to resolve the difference of medical opinions.)”

The trial court’s ruling is fully supported by the record.
At the time of plaintiff’s accident, he was 46 years of age and had roughnecked in the oilfields for approximately 12 years without having sustained any time loss injury. After the accident the preponderance of the evidence reflects that plaintiff’s disability is such that he cannot perform the heavy and strenuous duties of a roughneck. This disability will continue for an indefinite time in the future.
The physicians were not able to determine the exact cause of the disability, i.e., whether it was an aggravation of an existing condition or a ruptured disc. It is not necessary that plaintiff establish the exact medical diagnosis of his condition which causes disability.
Where there is proof of an accident and the following disability without any intervening cause, it is presumed that that accident caused the disability. It is not necessary to determine the exact cause of the disability. This presumption is re-buttable. The effect is to shift the burden to the defendant. Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973).
As we consider the lay testimony and the medical evidence presented, the defendant has not overcome the above presumption. The trial court was not clearly wrong in its award based on total permanent disability.
PENALTIES AND ATTORNEY’S FEES
Defendant alleges that the trial court erred in awarding plaintiff penalties and attorney’s fees on the basis of defendant’s alleged arbitrariness and capriciousness in terminating his compensation benefits on October 7, 1981. Defendant seeks avoidance of the penalty assessments, alleging *1280 its justifiable reliance upon the reports of Drs. Gaar, Webre and Dabezies. We agree with this position.
As we review the medical evidence we conclude that the trial court was clearly wrong in its determination that the defendant was arbitrary in its termination of compensation payments to plaintiff on October 7, 1981.
Defendant terminated payments on that date based upon a report by Dr. Gaar, the treating physician. This physician stated that plaintiff had recovered from his lumbar strain incurred in the accident. He stated, however, that plaintiff may have pain in performing heavy work but such pain would be due to a pre-existing spinal condition.
Plaintiff expressed a desire for more medical evaluation. As a result defendant sent plaintiff to Dr. Webre. Dr. Webre found that plaintiff had fully recovered and could return to work as a roughneck.
Thereafter, plaintiff was examined by Drs. Ventre and Phillips who both found that plaintiff had a possible herniated disc and was totally disabled.
Faced with this conflict of medical opinion, defendant did not cease its investigation. It sent plaintiff back to Dr. Webre and later had him examined by Dr. Dabez-ies. Dr. Webre again found that plaintiff recovered from his back injury and was able to return to work. Dr. Dabezies came to the same conclusion.
The defendant had a reasonable basis for terminating payments when it received the report of Dr. Gaar. This physician was plaintiff’s treating physician. This position was further supported by Dr. Webre’s report. In addition, after Drs. Phillips and Ventre reported that plaintiff was still disabled due to a possible disc injury, the defendant promptly had plaintiff re-examined by Dr. Webre and examined by Dr. Dabezies to obtain their further diagnosis as to the existence of disability. After a favorable report from these latter physicians, we conclude that defendant acted reasonably and had good cause not to resume payments of workmen’s compensation benefits. The trial judge was clearly wrong in ruling that the defendant was arbitrary in its termination of payments. See Hall v. Houston General Ins. Co., 377 So.2d 561 (La.App. 3rd Cir.1979), writ den., 379 So.2d 10 (La.1980).
We shall reverse the portion of the trial court judgment awarding penalties and attorney’s fees.
For these reasons the portion of the trial court judgment awarding plaintiff penalties and attorney’s fees is reversed and set aside. In all other respects the trial court judgment is affirmed.
The costs of this appeal shall be paid one-half by plaintiff, Robert Devillier, and one-half by defendant, N.L. Industries, Inc.
AFFIRMED IN PART; REVERSED IN PART.

. We interpret this as a judgment for payments due for total permanent disability.

. "Sciatica" is defined as being pain felt along the course of the sciatic nerve and can be in the lower back, buttocks, hips or adjacent areas.