MARVIN, Judge.
In this worker’s compensation action, the trial court found that although the claimant had sustained an on-the-job accident, he had not sustained the burden of proving that his disability was caused by the accident, particularly because claimant failed to call as witnesses some, but not all, of the medical doctors who had examined him.[1] The claimant appeals. We reverse and remand with directions.
Defendant produced no medical witnesses to contradict the sworn testimony of the two doctors who were called by claimant. These doctors were an orthopedist to whom the employer referred claimant and who first saw claimant following the accident, and a general practitioner who more frequently saw and treated claimant during the several months between the accident and the trial. Four other doctors (neurologists and a urologist) saw claimant one or more times.
Even if claimant’s failure to call the four doctors creates a presumption that their testimony would have been adverse to claimant, the trial court was in error in not finding that this presumption was overcome by the sworn uncontradicted testimony of medical witnesses who testified in person and by deposition. Muse v. Sentry Insurance Company, 269 So.2d 609 (La.App. 3d Cir. 1972); Carroll v. Southern Casualty Insurance Company, 285 So.2d 370 (La.App. 3d Cir. 1973).
This claimant was a service station equipment mechanic who had been employed by defendant employer for some 19 years when the accident occurred on January 26, 1977. Claimant was repairing an air compressor in a customer’s barn when the floor gave way and claimant partly fell through the floor. The heavy air compressor then fell on his chest and arm, rendering him momentarily unconscious. Claimant eventually got out of his predicament, rendered first aid to himself, and, with some difficulty, completed the repair of the compressor and returned to his employer’s shop. The employer does not deny that claimant reported the accident, that the claimant was referred to an orthopedist, Dr. Rambach, that the claimant thereafter complained of numbness in his arm and of some difficulty in performing some job assignments. The employer stated that claimant was a “good employee” in whose integrity the employer had “complete faith”. The employer related plaintiff’s arm weakness to “old age” rather than to the accident.
Dr. Rambach examined claimant on April 8,1977, and found that the triceps muscle in the left arm had been torn from its anchor point on the left elbow and that there was an abnormal bony formation in the area of the tear. According to Dr. Rambach, these conditions could cause the numbness, weakness, and pain about which claimant complained. Dr. Rambach recommended surgical correction of the muscle tear and removal of the bony formation but claimant attempted to continue working and did not follow Dr. Rambach’s recommendation.[2]
*864 Beginning in May 1977 and periodically thereafter until the day before trial, claimant began seeing a general medical practitioner, Dr. Powell. Dr. Powell treated plaintiff for his arm condition on many occasions as well as for apparently more frequent complaints of prostate problems and inability to urinate without pain. Dr. Powell examined claimant the day before trial and found decreased arm strength, atrophy, calcification, and nerve damage in the left arm, all of which he related to the January 1977 accident.[3]
While his condition deteriorated, claimant continued his employment with defendant until December 1977. He earlier began looking for employment or gainful activity less strenuous and less demanding than his mechanic work. He entered into some arrangement, either a partnership or joint venture, with a friend who was a service station owner and who, like claimant, was a part time preacher. In this arrangement claimant eventually became less able to engage in limited and light work, pumping gas, sweeping, servicing motor vehicles. Claimant and other lay witnesses testified about claimant’s demonstrations of increasing pain, atrophy, and weakness in his left arm, and about claimant frequently dropping things.
Claimant underwent prostate surgery in 1976. He testified that it was more painful for him to urinate after the 1977 accident than before. No medical testimony was offered in this respect by plaintiff or by the employer. Claimant did testify that when he fell through the floor in the 1977 accident that he went through the floor only up to his “crotch”. Claimant complained to Dr. Powell about groin pain.
The plaintiff’s testimony, corroborated by lay and medical witnesses, that he suffers substantial pain when he attempts to perform mechanic work after the accident, is not contradicted. He was a skilled employee and the fact that he performed some menial tasks in a limited capacity of a service station attendant does not abate his disability under the law.[4]
A claimant’s disability is presumed to have resulted from an accident if, before the accident, the injured person was in good health, the symptoms of the disabling condi *865 tion appear after the accident and manifest themselves continuously afterwards, providing there is a reasonable possibility of causal connection between the accident and the disabling condition. The emphasis is ours. The language is the Supreme Court’s. Lindsey v. H. A. Lott, Inc., 387 So.2d 1091 (La.1980); Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977); Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La.1974); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973). See also Dixon v. Ruby’s, Inc., 389 So.2d 73 (La.App. 1st Cir. 1980).
The effect of this presumption, when applied, is to require the employer to show that the disability was caused other than by the accident complained of. Haughton v. Fireman’s Fund American Ins. Companies, 355 So.2d 927 (La.1978); Gradney, supra; Johnson, supra. Here the employer did not produce evidence to overcome the presumption that the claimant’s disability was caused by the accident.
Claimant has shown the required reasonable possibility of causal connection between the accidental injury and substantial pain which is disabling. While some of his pain emanates from his groin and may be attributable to a pre-existing prostrati-tis, the pre-existing condition does not deter our conclusion of total and permanent disability. See Brewster v. City of Shreveport, 115 So.2d 229 (La.App. 2d Cir. 1959). This condition was not disabling before the accident and his muscle tear and calcification, resulting in atrophy, weakness, and pain in the left extremity resulted from, and did not pre-exist, the accident. Plaintiff has shown a reasonable possibility of causal connection between the accident and the disabling condition. Under these circumstances, the defendant employer is liable for worker’s compensation benefits.
This claimant was a skilled service station equipment mechanic until the effect of the accident eventually disabled him. If a skilled employee, after a disabling injury, is able to perform in some gainful but less skilled occupation which exists in a reasonably stable and available labor market, he is not totally and permanently disabled within the meaning of the worker’s compensation law. LRS 23:1221. See Malone-Johnson, “Workmen’s Compensation”, 2d Ed., La. Civil Law Treatise, Vol. 13, §§ 273-280. This claimant did attempt to perform, with limitations, some of the duties of a service station attendant. Because of arm weakness and substantial pain, he is unable to fully perform it in this capacity for his friend and business associate, who testified about claimant’s limited and inept performance. Claimant’s income from this source, approximately $30 per week, is minimal, and his ability to perform has been shown to have steadily decreased. In similar circumstances, some courts have found a claimant totally and permanently disabled under the amended law. See cases cited, Malone-Johnson § 277, fn. 96, pg. 628. See Cousins v. Lummus Co., 364 So.2d 993 (La.1979); Irby v. Edwards Rental & Fishing Tools, Inc., 380 So.2d 711 (La.App. 4th Cir. 1980).
While an operation to remove the calcification from his arm and to reattach the torn muscles to the bone might affect the strengthening of claimant’s arm and lessen his arm weakness and pain, the duration and extent of this plaintiff’s disability, even though perhaps eventually indefinite, at the time of trial is total and permanent. Under such circumstances a judgment for total and permanent disability should be awarded. See Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976). See also Schriner v. Riverside Companies, 378 So.2d 1035 (La.App. 2d Cir. 1979).
Accordingly, the judgment of the trial court is reversed and this cause is remanded to allow the trial court to determine and render judgment for the amounts to which the employee is entitled under the worker’s compensation law, at the cost of the employer.
REVERSED AND REMANDED.

. “For reasons assigned in oral opinion, the Court finds ... that there was a job related injury, however, that the job related injury was not connected with the prostate condition, the related injury was so minor that the plaintiff was able to continue in his regular employment for a period of one year, or almost one year, and at the time he left his employment that he had entered into a business venture whereby he would continue working in the same capacity. The Court finds that the plaintiff has failed to sustain his burden and in particularly, his failure to call as witnesses Dr. Faludi, Dr. Megi-son, Dr. Kerlin and Dr. Gaddis, and the Court finds that the presumption that these doctors would have testified adversely would defeat his cause in this case and there be judgment accordingly.”
Extract from Court Minutes, page 5

. “[H]e gave a history of injuring his left elbow two months prior to that time when he fell through a floor working at Gleason’s farm. He indicates that he was actually employed by Jones Brothers Company and he said that he struck the back of his left elbow. When I saw him he was still having difficulty with his el *864 bow. He described weakness of the elbow and pain in the back of his elbow.
* sfs ¡>fi * sfc
“Also, he demonstrated weakness of the tricep muscles. There appeared to be a tear or detachment of some, if not all, of the tricep tendons to what we' call the olecranon process, which is the humpy portion of the back part of your elbow. That is where the triceps muscles attaches which is the big fleshy muscle on the back side of your arm which is responsible for bending your arm, bringing your arm out straight.
“Q. Were there any X-rays taken at the time?
“A. Yes, sir.
“Q. What did the results show?
“A. ... X-rays .. . showed some calcification and ossification which seemed to be some abnormal bony formation about the posterior aspect of the elbow in the region of the triceps muscles attachment. This seemed to have the appearance of a myositis ossificans and there was no bony abnormalities otherwise.
******
“Myositis ossificans is about what I already said is where a bone forms at the site of trauma usually in an area where you normally wouldn’t see bone, like usually it is close to a muscle attachment or in the muscle portion of a motor unit. For example, usually a blunt injury that we see frequently in football players where they get an injury to a muscle sometimes this will go on and heal in an area that abnormal bones form. So, myositis means inflammation of muscles and ossificans means bone formation. So, abnormal bone formation in muscle ... there had been some type of trauma to that area[.]
******
“[H]e probably should have surgery to the elbow in order to help strengthen the elbow by reattaching the triceps muscle and excising the ossified area of the myositis ossificans. * * ”
Deposition of Dr. Rambach, pp. 52-54.
Claimant paid his own medical bills and testified that he was not able to bear the expense of surgery.

. Between May 17, 1977, and January 23, 1978, according to plaintiffs answers to interrogatories, Dr. Powell saw plaintiff five times in his office. After January 23, 1978, and before trial, Dr. Powell saw plaintiff an undetermined number of times.

. Walker v. Gaines P. Wilson & Son, Inc., supra.