CHEHARDY, Judge.
Plaintiff, Phil John Martin, appeals a district court judgment in favor of the defendants, H. B. Zachry Company (Zachry) and Employers National Insurance Company, and against the plaintiff, dismissing his suit for workmen’s compensation benefits at his costs.
The plaintiff was injured on September 24, 1975 during the course and scope of his employment with Zachry. At that time he was working as an electrician, making $8.60 an hour. He testified on that date he tripped while carrying a load and twisted to prevent himself from falling. He was subsequently brought by ambulance to the office of Dr. Walter Brent.
Dr. Brent, stipulated to as an expert in orthopedic surgery, testified by deposition. He said on the date of injury Martin exhibited a spasm in the lumbar spine and suffered pain in his back area on attempting to stand erect. He felt the patient had a very acute back spasm and admitted him to a hospital.
While the plaintiff was hospitalized, Dr. Brent stated that a myelogram was performed which he and the attending radiologist interpreted as normal, and he said there were no signs of nerve root compression from the disc. He testified that if Martin had suffered a ruptured disc as a result of the September, 1975 accident he would have expected a positive myelogram and that this type of test is 80 percent accurate.
After discharge from the hospital, Dr. Brent saw the patient on a number of occasions in his office and, although he still complained of some pain, Martin stated it was better and then became worse. The physician placed him on additional medications and hot tub soaks and said there were no objective findings to substantiate his complaints of pain. He further testified that he could not account for Martin’s continued subjective complaints, felt there was no further need for orthopedic treatment, and discharged the patient on January 7, 1976. He said as of that date he felt the plaintiff could return to work with no restrictions and added that if a patient such as Martin had been operated on some two years after the subject accident for a ruptured disc, he would feel it had been caused by something other than the 1975 work-related injury.
Dr. John Jackson, stipulated to by the parties as an expert in neurosurgery, testified by deposition that Martin was referred to him by Dr. Brent for a neurologic examination, the results of which were completely normal. He said he also interpreted the myelogram previously done on Martin as normal, but to rule out a “bulging disc,” he recommended the plaintiff undergo a disco-gram, done by Dr. Jackson personally, the results of which were also normal.
Dr. Jackson explained that the percentage of reliability of a discogram is approximately 98 percent, whereas myelograms are 80 percent accurate. He stated that he again saw Martin in May of 1976 and felt at that time his complaints were on a muscle basis with a lot of psychological overlay. He also stated that any number of everyday activities can account for a ruptured disc. Dr. Jackson said, “Trauma, if its going to cause a ruptured disc, should show up within a few weeks or a few months after the injury.” And he added he was “certain” the plaintiff did not have a ruptured disc when he saw him in December of 1975, several months after the accident.
The plaintiff was seen two years after the accident by Dr. Courtney L. Russo, an *1125 orthopedic surgeon. Dr. Russo testified by deposition that he first treated the plaintiff nonoperatively with bed rest, traction, heat, sedation and, when Martin failed to respond to treatment, he performed a second myelo-gram, which he interpreted as abnormal. He said he operated on the patient, doing a lumbar laminectomy with discectomy in order to remove a ruptured disc.
Dr. Russo had no explanation when asked why the other physicians who previously treated Martin found no pathology related to the plaintiff’s symptoms. He said he found no extraordinary emotional overlay in this patient and that he would discourage Martin from returning to lifting heavy objects because of the chance of repeated rupture at the same level or at different levels and the slight weakening of the spine as a result of the operation. However, he said the plaintiff may bend, climb, stoop, and use heavy equipment with his hands, but not with his back. When asked if it were more probable than not that the disc removed in 1977 was related to the accident which occurred in September of 1975, the physician said he could not say “one way or the other.” Dr. Russo said that when he last saw the plaintiff on April 10, 1979 he had a 5- to 10-percent whole body physical impairment and that this was the same rating he would give to anyone who has had a lumbar laminectomy with intermittent discomfort and stiffness with a negative neurological examination.
After the patient was discharged by Dr. Brent, he was treated by Dr. Frank Mooring, a chiropractor, who testified he administered treatment consisting of chiropractic adjustment and mechanical manipulation, diathermy and muscle stimulation.
The plaintiff testified at trial that since the date of the accident he is no longer able to carry out the functions of lifting, bending, and climbing that he previously performed in connection with his employment. He said that since the date his compensation payments were stopped in January of 1976 he has worked for his father doing light duty.
Malcolm Martin, the plaintiff’s father, testified that he lived next door to his son, who he said never complained of leg or back pains prior to the September, 1975 accident. He also said the plaintiff worked for him in a limited capacity doing paper work, working up estimates and bids, writing bills and giving technical advice to other employees. He said after the operation his son’s complaints decreased and he now works for him but does no climbing or lifting of heavy objects, nor does he stay in a stooped position for any length of time. During the three years the plaintiff has worked for him, the elder Martin said on seven or eight occasions he has had to stay home for as many as two or three days at a time. He said on those occasions when he was not able to do anything he was still paid his regular salary. He also admitted on cross-examination that he paid his son 13 hours per week of overtime.
At trial the report of another neurosurgeon, Dr. Richard W. Levy, to whom plaintiff was referred by his attorney, was also introduced, and it stated that the physician could not find evidence of a ruptured disc.
In his reasons for judgment, the district court judge noted that he must rely on the preponderance of medical opinion that no causal connection exists between the “incidents,” referring to the disc problem in September, 1977 and the accident sustained by the plaintiff in 1975.
Plaintiff argues on appeal that he should be declared totally and permanently disabled since he has established a prima facie case that because of his physical impairment he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. In support of this contention, the plaintiff cites Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980), wherein the court also stated that the above “odd lot” doctrine can also be applied if a worker’s pain appreciably limits types of work available to him and greatly diminishes his ability to compete in the labor market.
*1126 The plaintiff also cites the case of Lindsey v. H. A. Lott, Inc., 387 So.2d 1091, 1092 (La.1980), wherein the court stated:
“As in any other civil suit the plaintiff in a workmen’s compensation action has the burden of establishing his disability and the causal relation between it and the accident by a preponderance of the evidence. This court has held, however, that a claimant’s disability is presumed to have resulted from an accident if, before the accident, the injured person was in good health, the symptoms of the disabling condition appearing after the accident and manifesting themselves continuously afterwards, providing there is a reasonable possibility of causal connection between the accident and the disabling condition. Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977); Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La.1974); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973).”
In the Lindsey case, the court reversed the appellate court and the trial court and remanded the case to the trial court after it determined that the plaintiff had met his burden of proving by a preponderance of the evidence that his disabling condition was caused by the accident he suffered while in the employ of the defendant. However, in Lindsey the court noted, in so concluding, that: “[t]he medical testimony was clearly to the effect that the accident was at least a reasonably possible cause of the condition for which the plaintiff was diagnosed.” 387 So.2d at 1092-1093.
In the present case, conversely, all the medical testimony, with the exception of that of Dr. Russo, was uncontradicted that the ruptured disc diagnosed and operated on two years after the plaintiff’s employment accident was not caused by that accident. Even Dr. Russo, moreover, could only testify that, in regard to the causal connection between the accident and the ruptured disc, he could not say one way or another if it was more probable than not. This court, therefore, although following the dictates of the Lindsey case, must agree with the trial court that the medical testimony in the present case has disproven the reasonable possibility of a causal connection between the accident and the disabling condition, the ruptured disc, in spite of testimony that the plaintiff was in good health before the accident and has complained of pain continuously since the date of that occurrence.
This court, moreover, is bound to the following scope of review, in a case such as the present one, articulated in Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979), at 301-302:
“On appellate review, the trial court’s factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter’s reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings, unless clearly wrong. The reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.
“See: Cadiere v. West Gibson Products Company, 364 So.2d 998 (La.1978); Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La. 1974). See also Canter v. Koehring, 283 So.2d 716 (La.1973).
“As noted by these decisions, the reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
As explained above, there is ample evidence in the record to sustain the district judge’s conclusion that the disability the plaintiff suffered immediately prior to his operation (ruptured disc) and impairment he suffered subsequent to that procedure were not causally related to his employment accident.
*1127 For the reasons assigned, therefore, the trial court judgment dismissing the plaintiff’s suit at his costs is affirmed.
AFFIRMED.