424 So.2d 1002 (1982)
Phil John MARTIN
v.
H.B. ZACHRY COMPANY, et al.
No. 82-C-1221.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied January 7, 1983.
*1003 Gordon Hackman, Boute, for applicant.
Darryl J. Foster, New Orleans, for respondent.
BLANCHE, Justice.
In this case we are asked to determine whether the plaintiff, Phil John Martin, proved by a preponderance of the evidence the existence of a causal connection between an employment-related accident and a ruptured disc discovered and surgically corrected more than two years later.
Following the surgery, Martin brought this suit against the defendants, H.B. Zachry Company, the employer, and Employers National Insurance Company, the employer's workmen's compensation carrier, to recover workmen's compensation benefits for total and permanent disability, plus medical expenses, damages, and attorney's fees. The trial court dismissed Martin's suit, finding that he had not carried his burden of proving the causal connection between the injury and the accident. The court of appeal affirmed, finding that Martin had not showed that there was a reasonable *1004 possibility of a causal connection between the accident and injury. We disagree. Our review of the record shows that Martin established the causal connection between the accident and the ruptured disc by a preponderance of the evidence. Accordingly, we reverse, 411 So.2d 1123 (La.App. 1982).

CAUSATION
The evidence is uncontroverted that the plaintiff, an electrician, did sustain a back injury on September 24, 1975 during the course and scope of his employment. Martin, while carrying a load at the Zachry job site at the Union Carbide Plant in Taft, Louisiana, slipped on some steel concretereinforcing rods and twisted his body as he fell to the ground. Because of a sharp pain in his lower back, Martin could not continue movement and had to be transported by ambulance to the office of Dr. Walter Brent, an orthopedic surgeon.
Dr. Brent diagnosed the plaintiff as having a "very acute back sprain." Otherwise, the neurological and orthopedic tests performed by him were normal. Martin's complaints of back pain persisted, however, and Dr. Brent performed a myelogram. The results of this test proved normal also, and Martin was referred to Dr. John Jackson, a neurosurgeon. The neurological examinations and tests performed by Dr. Jackson also proved normal, so he performed a discogram, a test designed to detect the presence of a ruptured disc. The discogram proved negative. Martin remained under the care of Dr. Brent until January 7,1976, when he was discharged as being able to return to work. Up until that time, Martin had been paid workmen's compensation benefits and medical expenses totaling $4,250.34.
From the time of his discharge from Dr. Brent until August, 1977, plaintiff received treatment from a chiropractor. At about that time, at the insistence of his attorney, Martin was examined by yet another neurosurgeon, Dr. Richard Levy, who found no evidence of a ruptured disc. Finally, in September, 1977, while hospitalized with another ailment, plaintiff was referred to still another orthopedic surgeon, Dr. Courtney Russo. Finding fault with the diagnoses of the earlier examining physicians, Dr. Russo performed another myelogram, which he interpreted as showing an abnormality. Martin submitted to surgery, and Dr. Russo repaired what he determined to be a rupture at the "L-5 level."
The plaintiff in a workmen's compensation action has the burden of establishing by a preponderance of the evidence the causal connection between his disability and the accident. Lucas v. Insurance Company of North America, 342 So.2d 591 (La. 1977); Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La.1974); Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973). We find that the medical testimony in this case establishes the existence of a causal connection between the accident and the injury by a preponderance of the evidence.
The evidence is uncontradicted that Martin had no problems with his back prior to the accident. Since the accident, however, and up until the time of the surgery, Martin was in continuous pain. Dr. Brent, testifying by deposition, stated that the myelogram he had performed showed no signs of "nerve root compression." However, on cross-examination, he admitted that the results of the myelogram did show a swelling of the nerve root at the L-5 level. He interpreted this swelling as a normal variation. Dr. Brent admitted that a myelogram is only 80 percent accurate in diagnosing a ruptured disc, and, under certain conditions, might be only 50 percent accurate.
Dr. Jackson testified, also by deposition, that even though the results of all of his examinations and tests were normal, he had expected the discogram to show a rupture at the L-5 level and was surprised when none appeared. In a letter to Dr. Brent before the discogram, Dr. Jackson apprised him that his interpretation of the myelogram revealed a "large dilated nerve root" at the L-5 level, on the right side, which could have been caused by a disc bulge *1005 compressing the nerve root. This bulge would have been the cause of the plaintiff's pain.
Dr. Jackson also testified that it was possible to discover a ruptured disc during the course of surgery even where it had not been diagnosed by a myelogram or discogram prior to the operation. He estimated the discogram to be 98 percent accurate, but recognized that certain maladies may go undiagnosed no matter how many tests are performed. In his words, "Medicine is more of an art than a science."
Dr. Russo, also testifying by deposition, stated that he interpreted the first myelogram to show an abnormality at the L-5 level. This testimony is consistent with Dr. Jackson's initial interpretation of the first myelogram. However, contrary to the ultimate diagnoses of Dr. Brent and Dr. Jackson, Dr. Russo interpreted the abnormality to be consistent with a ruptured disc. This diagnosis was confirmed by the second myelogram, whereby he found another abnormality at the "L-5 disc area on the right."
We recognize that the factual findings of the trial court as to work-related disability are entitled to great weight on appellate review. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998 (La.1977). However, in this case, we are forced to conclude that the findings of the lower courts are manifestly erroneous.
The lower courts attached great weight to the opinions of the examining physicians that the ruptured disc had to have some cause other than the on-the-job accident. However, in cases such as these, the ultimate determination as to whether a plaintiff has proved the causation of his disability is made by the courts and not by medical experts. The courts apply legal tests to the facts of the case in order to achieve a just and equitable result. Causation is not necessarily a medical conclusion. Guillory v. USF & G Co., 420 So.2d 119 (La.1982); Haughton v. Fireman's Fund American Insurance Co., 355 So.2d 927 (La. 1978); Bertrand v. Coal Operators Cas. Co., 253 La. 1115, 221 So.2d 816 (1969).
We find that the medical evidence clearly establishes a causal connection by a preponderance of the evidence. The plaintiff was in good health prior to the accident, and his back pain manifested itself continuously thereafter. Dr. Russo, the surgeon who ultimately repaired the disc, contradicted the diagnoses of the two earlier examining physicians. He interpreted both myelograms to indicate the strong possibility of a ruptured disc. His diagnosis was ultimately borne out when the herniated disc was surgically repaired. All testimony indicated that the myelogram and discogram are 80 and 98 percent effective, respectively, in diagnosing a ruptured disc. This means that out of every 100 persons with ruptured discs who are tested, there will be between 2 and 20 persons who do not test positive. Apparently, the plaintiff, Phil John Martin, fell within this exceptional group. Therefore, we deem Martin to have carried his burden of proof by a preponderance of the evidence.

EXTENT OF DISABILITY
Martin claims that he is totally and permanently disabled because he cannot return to the same type of work he was performing at the time of the accident. He asserts that substantial pain prevents him from performing duties as an electrician and would have us characterize him in the "odd-lot" category of disabled workers.
In Oster v. Wetzel, 390 So.2d 1318 (La.1980), we adopted the so-called "odd-lot" doctrine which provides that the claimant is entitled to a total and permanent disability when he establishes a prima facie case that, because of the physical impairment and other factors such as mental capacity, education, and training, he can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist. 390 So.2d at 1324. The odd-lot concept may also be applied in cases where the worker, because of his injury, is in such substantial pain that work becomes an overburdening *1006 task. Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Lattin v. Hica Corp., 395 So.2d 690 (La.1981); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La. 1980).
Based on the evidence in this case, we must conclude that Martin is not totally disabled under either the substantial pain or broader odd-lot doctrine. However, we do find, by a preponderance of the evidence, that Martin is permanently and partially disabled.
Based on his final post-operative examination of Martin, Dr. Russo assigned a permanent disability rating of 5-10 percent. He testified that he had determined the surgery to be successful and would have assigned such a rating to anyone who had a L-5 disc surgically repaired. Dr. Russo opined that Martin could perform gainful employment in his field as long as it did not involve excessing bending at the waist or involve heavy lifting with the back. He stated that Martin could bend at the waist, climb, stoop, use heavy equipment with his hands, and perform most types of physical labor without any substantial or appreciable pain.
Martin has made no attempt to return to the type of work he was performing before the accident. He has, however, continuously worked for his father's electrical contracting company since his benefits were terminated on January 7,1976. The company is engaged in the business of wiring residential homes under construction, and Martin is on full duty with the company. Plaintiff and his father testified that his duties included supervision and manual labor consistent with his ability to perform it as necessary, except for extensive climbing and close-quarters work in the attic. The elder Martin testified that the plaintiff generally sits on a low bench to install wiring and that he is able to stoop some in order to complete the job, but that the job does not entail extensive stooping or remaining in that position for any great length of time.
Martin's wages on this job have been consistent; following the surgery, in 1978 and 1979, respectively, he has earned $14,500 and $15,500. He has consistently been paid for 48 hours per week and has performed clerical, technical, and supervisory work for the company in those periods where he deemed himself unable to perform physical labor. His pay level has remained constant regardless of the capacity in which he has performed for the company. Martin's wife testified at trial that his condition has improved since the surgery, and Dr. Russo's post-operative examinations showed a steady physical improvement.
In our opinion, Martin has failed to prove that he is totally disabled under either the substantial pain or the broader odd-lot doctrine. All medical testimony shows that Martin can assume virtually the same duties for which he was employed prior to the accident, modified only to exclude excessive bending from the waist or heavy lifting involving the back. He can climb, bend, stoop, or use heavy equipment with his hands without any substantial pain. Martin is now 30 years old and a high school graduate. He has been gainfully employed as an electrician since his benefits were terminated and has not shown that he is so physically impaired or lacks the mental capacity, training, or experience such that no reasonably stable market for his services exists. If anything, Martin's work history subsequent to the accident demonstrates that he is able to earn a living as an electrician substantially consonant with, if not roughly equal to, his employment prior to the accident. There exists at least no overwhelming physical obstacle to his finding similar electrical work should the present situation prove unsatisfactory.
Although Martin is not totally and permanently disabled, he is not precluded from receiving any compensation award at all. Dodd v. Nicolon Corp., 422 So. 2d 398 (La.1982); Schouest v. J. Ray McDermott and Co., Inc., 411 So.2d 1042 (La.1982); Allor v. Belden Corp., 393 So.2d 1233 (La.1981). An employee may be deemed partially disabled if he is unable to *1007 perform the same duties in which he was customarily engaged when injured, or duties of the same or similar character for which he is fitted by education, training or experience. LSA-R.S. 23:1221(3). We find that the preponderance of the evidence conclusively establishes that the plaintiff, Phil John Martin, is permanently and partially disabled.
There was testimony to the effect that Martin's prior job with Zachry involved the lifting and carrying of heavy loads. Indeed, Martin was injured when he slipped while carrying such a load. Dr. Russo specifically warned against such activity and testified that although Martin should be able to perform virtually all of his previously required tasks, the lifting of heavy loads with the back created a risk that Martin would rupture another disc due to the now weakened condition of his spine. Zachry obviously expects its electricians to carry heavy loads such as conduit pipe on the job-site. Since Martin is no longer able to perform such tasks, but substantially all others required by Zachry, he may be deemed permanently and partially disabled. cf. Dodd V. Nicolon Corp., supra; Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981); Lattin v. Hica Corp., supra; Dusang v. Henry C. Beck Builders, Inc., supra; see also Graham v. Jones Bros. Co., Inc., 393 So.2d 861 (La.App. 2nd Cir.1981), after remand, 412 So.2d 675; Skinner v. Baggett Transp. Co., 391 So.2d 555 (La.App. 4th Cir.1980).

BENEFITS DUE
Since Martin was injured on September 24,1975, he is entitled to weekly compensation benefits not to exceed 400 weeks from that date, with credit for benefits previously paid and for those weeks in which actual wages are earned. Since Martin has been continuously employed by his father's electrical contracting company when benefits were terminated on January 7, 1976, he is entitled to compensation at the rate of 662/3% of the difference between his weekly wages earned at the time of the injury and his weekly wages actually earned thereafter. If there occur any weeks in which Martin's weekly wage with his father's company, or any subsequent employer, equals or exceeds his weekly wage at the time of the accident, Martin is entitled to no compensation during that period. LSA-R.S. 23:1221(3); LeBlanc v. Commercial Union Assur. Co., 349 So.2d 1283 (La.App. 1st Cir.), writs denied, 351 So.2d 174 (La.1977). The maximum weekly compensation to be paid is $85.00 per week. LSA-R.S. 23:1202(1).
We find that Martin is entitled to receive partial permanent disability benefits commencing on September 24,1975. Since benefits of $85.00 per week were paid until January 7, 1976, the defendants are to be credited for the weekly payments made up until that date. Our review of the record shows that Martin earned a total of $9,910.33 during calendar 1976. Excluding the one week of that year where he was paid disability benefits, Martin's weekly earnings amounted to $194.34 per week. At the time of the accident, Martin was earning $8.60 per hour, for a total of $344.00 per week. Sixty-six and 2/3% of the difference is $99.77. However, the maximum benefit payable is limited to $85.00. LSA-R.S. 23:1202(1).
Martin earned a total of $13,621.71 during calendar 1977, making his weekly earnings $261.95. Sixty-six and 2/3% of the difference between $261.95 and $344.00 is $54.69. In 1978, Martin earned $14,501.99 for a weekly total of $278.88. Sixty-six and 2/3% of the difference is $43.41. In 1979, Martin earned $15,505.50 for a weekly total of $298.18. Sixty-six and 2/3% of the difference is $30.54. Therefore, Martin is entitled to weekly benefits of $85.00 for calendar 1976, $54.69 for calendar 1977, $43.41 for calendar 1978, and $30.54 for calendar 1979. The record before us is complete through 1979, but we have no record of Martin's earnings for 1980 to the present. His weekly benefits for those years and hereafter, however, are to be calculated by Employers National according to this formula as set out in LSA-R.S. 23:1221(3). Legal interest shall accrue on all past due installments from the date due until paid.
*1008 Martin has also requested that the defendants pay the medical expenses he incurred in receiving medical treatment subsequent to January 7,1976. His medical expenses incurred up until that time were paid by the defendants. Under LSA-R.S. 23:1203, the defendants are required to pay for all necessary medical, surgical, and hospital services, plus medications and any other non-medical treatment which are recognized by the laws of this state as legal. Additionally, the defendants must pay the actual expenses and mileage reasonably and necessarily incurred by Martin in order to obtain the services, medications, or prosthetic devices which the defendants are required to furnish under this section. Gourdan v. Rockwood Ins. Co., 368 So.2d 1156 (La.App. 3rd Cir.1979); Alexander v. Reed, 350 So.2d 179 (La.App. 1st Cir.), writs denied, 350 So.2d 1206 (La.1977); Reed v. Employers Mut. Liability Ins. Co. of Wisconsin, 303 So.2d 506 (La.App. 2nd Cir. 1974); Dyson v. Travelers Ins. Co., 256 So.2d 468 (La.App. 4th Cir.1972). We recognize the legality of chiropractic treatment in this state, therefore the defendants must pay for the chiropractic treatment which Martin engaged to try to relieve his pain in the interim between the accident and the surgery. Gourdon v. Rockwood Ins. Co., supra. Therefore, the defendants are hereby ordered to pay for all of the above enumerated medically-related expenses actually incurred and proved by Martin as necessary to the treatment of his ruptured disc.

PENALTIES AND ATTORNEY'S FEES
Finally, Martin claims that the termination of benefits by the defendants and their failure to re-institute payment was arbitrary and capricious, and, as such, makes the defendants liable to him for penalties and attorney's fees. Under LSA-R.S. 23:1201.2, if the termination and failure to re-institute payment are found to have been arbitrary, capricious, or without probable cause, the employer may be compelled to pay a penalty of 12% of the total amount of the claim, together with all reasonable attorney's fees incurred by the claimant in prosecution of the claim. In our opinion, the termination of benefits by the defendants in this case was not arbitrary, capricious, or without probable cause. Therefore, they shall not be required to pay a penalty or the attorney's fees incurred by Martin in the prosecution of this suit.
This section is penal in nature and must be strictly construed. Cole v. Sears, Roebuck & Co., 337 So.2d 900 (La.App. 3rd Cir.1976). A termination of compensation will not be held to have been arbitrary or capricious where the insurance carrier bases its decision to terminate on competent medical evidence. Breaux v. Marine Electric Co., 369 So.2d 196 (La.App. 3rd Cir. 1979); Webb v. Turbex Const. Co., 368 So.2d 789 (La.App. 2nd Cir.1979); Thompson v. Natchitoches Parish Hosp. Service Dist., 335 So.2d 81 (La.App. 2nd Cir.), writs denied, 338 So.2d 298 (La.1976).
In this case, Employers had a reasonable basis for terminating benefits. The examinations of Dr. Brent and Dr. Jackson revealed no ruptured disc. Based on the best medical advice available at the time, Employers rightfully determined that Martin was not disabled when released by Dr. Brent on January 7, 1976 as fit to return to work. The question of causation in this case is a close one, and it would be manifestly unfair to the defendants to assess penalties and attorney's fees against them. cf. Rodriguez v. City of New Orleans, 384 So.2d 1006 (La.App. 4th Cir.1980).

DECREE
Therefore, for the reasons assigned, the judgments of the trial court and the court of appeal are reversed in their determinations that the plaintiff, Phil John Martin, had not proved causation. The plaintiff is entitled to partial permanent disability benefits pursuant to the provisions of LSA-R.S. 23:1221(3), dating from September 24, 1975, not to exceed 400 weeks, subject to a credit for prior benefits paid and actual wages earned. Legal interest shall accrue on all past due payments from date due until paid. The plaintiff is also entitled to *1009 all medically-related expenses actually incurred and necessary for the correction and treatment of his ruptured disc as set out in LSA-R.S. 23:1203. The plaintiff is not entitled to penalties or attorney's fees, but the costs of these proceedings are taxed to the defendants.
REVERSED AND RENDERED.
LEMMON, J., concurs and will assign reasons.