AUGUSTINE, Judge.
Plaintiff Richard Robertson instituted this action for workmen’s compensation following a job-related accident which occurred during his employment with Scanio Produce and Institutional Foods, Inc. The trial court rejected plaintiff’s demand, and this appeal followed. We affirm.
The salient facts are these:
The accident in question occurred on December 24, 1980 when the plaintiff, while pulling a hand truck loaded with five cases of frozen chicken, tripped over an object and fell backwards. The full sixty-pound weight of the crates tumbled down upon Robertson, causing painful injury to his lower back. That day, plaintiff was admitted to West Jefferson Hospital, where his condition was diagnosed as a severe lumbar strain. Following plaintiff’s release from the hospital on January 14,1981, he continued to experience pain in the lumbar area. On January 22, 1981, a week after his discharge from West Jefferson Hospital, the plaintiff was informed by his treating physician, Dr. L. Thomas Cashio, that he might return to work, provided that he perform only light activities which would not require climbing or lifting.
Dr. Cashio saw the plaintiff on three subsequent occasions and each time noted a gradual improvement in Robertson’s condition. During the second of these visits, on February 19,1981, Dr. Cashio’s examination of the plaintiff revealed good range of motion of the back and an absence of muscle spasms in the lumbar region. Straight leg raise tests also proved negative, indicating no irritation to the nerve roots of the lumbar spine. Although Robertson continued to report pain in the lower back, Dr. Cashio informed the plaintiff that his recovery was sufficient to allow his return to normal activities as a truck driver for Scanio.
Plaintiff did not return to his job with defendant Scanio, but instead found employment as a truck driver with Crescent Construction Company from March 20, 1981 until May 4, 1981. Robertson then worked as a trench operator for Highlines Construction Company from May 26,1981 to July 28, 1981. Between September 17,1981 and October 30, 1981, the plaintiff was a sandblaster for P.A. Applicators, Inc. of Morgan City, Louisiana. Finally, in January 1982, Robertson worked for his landlord, helping to repair the roof of the Riviera Restaurant. The work was intermittent, dependent as it was upon favorable weather conditions.
Not long after leaving his landlord’s employ at the Riviera, the plaintiff was advised by his attorney to visit Dr. David M. Jarrott, a neurosurgeon. Dr. Jarrott saw Robertson for the first time on March 1, 1982, fourteen months after the accident which is the basis of this suit. During that visit, the plaintiff’s chief complaint concerned the persistence of pain in the lower back, and for the first time, he reported pain in his right leg that sometimes felt like needles and pins. After performing a number of tests and examinations (including a myelogram), all of which proved to be negative, Dr. Jarrott decided to perform a disco-gram, a procedure whereby spinal discs are injected with a dye solution in order to allow x-ray detection of leakage of dye from the disc. The “extravasated” dye often indicates a disc rupture or herniation.
The plaintiff’s discogram was interpreted by Dr. Jarrott as positive for rupture at the L6-S1 disc. The doctor’s diagnosis was later verified during surgery, when he discovered and removed a herniated disc at L5-Sl.
Soon after surgery, plaintiff filed this suit for workmen’s compensation against defendant Scanio, alleging that his disc injury and ensuing disability were caused by the accident of December 24, 1980. Defendant answered, contending that the rupture of plaintiff’s disc was caused at some later time, after Robertson had left the defendant’s employ.
’ Following trial on the merits, the district court entered judgment for the defendants. Plaintiff Robertson now brings this appeal.
*604 The plaintiff in a workmen’s compensation action must establish by a preponderance of the evidence the causal connection between his alleged disability and the accident at issue. Martin v. Zachry, 424 So.2d 1002 (La.1982); Lucas v. Insurance Co. of North America, 342 So.2d 591 (La. 1977). Whether such a causal relationship exists is a question of fact, and on appellate review, the trial court’s findings as to that issue will not be disturbed in the absence of manifest error. Crump v. Hartford Accident and Indemnity Co., 367 So.2d 300 (La.1979); Flood v. Hub Auto Parts, 425 So.2d 941 (La.App. 4th Cir.1983).
Where there is proof of an accident and of the following disability without any intervening cause, it is presumed that the, accident caused the disability. Guillory v. U.S.F. & G, 420 So.2d 119 (La.1982); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (La.1969); Clofer v. Pratt Farnsworth, 407 So.2d 1295 (La.App. 4th Cir.1981).
This presumption of a causal relation between the accident and later disability is rebuttable, however, and the defendant may prevail by showing that the injury was probably caused by some intervening occurrence, rather than by the accident alleged. Guillory, supra; Haughton v. Fireman’s Fund American Ins. Co., 355 So.2d 927 (La.1978).
In his reasons for judgment, the trial judge expressed his belief that the injury to plaintiff’s disc at L5-S1 was not caused by the accident of December 24, 1980, but by some later occurrence. The dispositive issue, therefore, is whether that determination is manifestly erroneous.
The trial court’s opinion finds ample support in the record. Dr. Cashio discharged the plaintiff to return to normal activity on February 19, 1981. During the next fourteen months, the plaintiff performed no less than twenty weeks of moderately heavy manual labor for four different employers. Each job involved the risk of damage to discs in the lower back. While working for Crescent Construction Company, for example, the plaintiff operated a trench machine, a kind of tractor used to burrow ditches in preparation for the laying of underground electric cables, transformers and the like. The plaintiff testified that driving the constantly vibrating, bouncing machine caused great pain to his lower back. Often, the plaintiff would have to dismount the tractor and descend into the ditch to untangle cables, which of course required frequent, painful bending.
Robertson’s job with Highlines Construction Company involved the same duties, but in addition, he was an underground electrician. The plaintiff stated that this job caused such severe pain that he could only work at half-speed. Rather than be fired, he quit.
Plaintiff’s later work with P.A. Applicators, Inc. was almost as arduous. There it was his function to sandblast the inside walls of pipe. Sometimes it was necessary to lift the pipes, and because they were often heavy, Robertson usually asked coworkers for assistance. But on those occasions when no one was available to help him, the plaintiff was forced to lift the pipes by himself. As Robertson admitted in testimony, this invariably caused pain to his lower back and he was, for that reason, forced to leave his job.
Robertson’s last employment was at the Riviera Restaurant, where he helped his landlord to install a new tarpaper roof. Such roofs are ordinarily covered with gravel after hot tar is applied. Such was the case here, and from time to time, Robertson took his turns hoisting buckets of gravel from the ground to the roof. He testified that his back pain persisted throughout his employment at the Riviera.
Dr. Robert L. Applebaum, a neurosurgeon, testified that any one of the plaintiff’s aforementioned jobs could have caused herniation of the disc at L5-S1, and that given Dr. Cashio’s original diagnosis— which ruled out such an injury — it was unlikely that the disc injury was caused by the accident of December 24, 1980. This view was disputed by Dr. Jarrott, who testified that in his opinion, there existed a causal *605 relationship between the Scanio accident and the later-discovered disc rupture. But as noted by the trial court, Dr. Jarrott’s view of causation was predicated upon the truth of his patient’s history, which was related by Robertson himself. In discovering a causal link between the accident and the injury, Dr. Jarrott assigned some importance to the fact that the plaintiff reported a history of pain in his right leg, and sometimes the sensation of “needles and pins”, symptoms which would indicate damage to the lumbosacral discs. But Dr. Cashio expressly stated that the plaintiff had never reported leg pains during his visits a year earlier, a fact which (among others) led Dr. Cashio to assert that the plaintiff’s injury was muscular rather than skeletal. Thus, at least one of Dr. Jarrott’s premises — that the plaintiff had a history of pain in the right leg — was shown to be false, and his ultimate conclusion — causation—is questionable. Such was the reasoning of the trial court, and we find no manifest error in that regard.
Moreover, Dr. Jarrott testified that a back sprain, being a purely muscular phenomenon, cannot be aggravated by hard work or exercise so as to result in a herniated disc. From this it follows the defendant cannot be liable unless Dr. Cashio’s original diagnosis of back sprain was incorrect.
Given the verdict in this case, the trial judge could not have believed Dr. Cashio to be mistaken. We detect no manifest error in that factual finding, for there is no basis in the record to doubt the accuracy of Dr. Cashio’s diagnosis, unless that doubt can be said to arise from the mere discovery of a ruptured disc fourteen months after the accident in question. But the plaintiff’s sole medical expert, Dr. Jarrott, admitted that Dr. Cashio’s diagnosis was in fact consistent with the discovery of a herniated disc in March 1982 — provided that Robertson had engaged in heavy manual labor for extended periods of time after December 24,1980, and that the plaintiff’s pain greatly increased after one specific date or after one particular type of activity. It should be recalled, at this point, that Robertson did perform heavy physical labor after the Sca-nio accident, and that on two occasions, he abandoned his work when he could no longer tolerate the pain. Thus, there is no refutation of Dr. Cashio’s original diagnosis, which excluded the possibility of disc injury-
It is therefore evident that the trial court believed:
1) that Dr. Cashio’s original diagnosis was accurate, and
2) that the plaintiff’s injury was probably caused by some accident subsequent to December 24, 1980.
Either of the above findings, if correct, is sufficient to affirm the judgment, and since we detect no manifest error in either, that is the result we reach.
In arriving at this conclusion, we are mindful of the recent decision in Martin v. Zachry, 424 So.2d 1002 (La.1982). There, a workmens’ compensation plaintiff Martin sought recovery for a ruptured disc at the L-5 level, alleging that the injury was suffered in a fall two years earlier. Shortly after the accident, the plaintiff’s condition was diagnosed as “very acute back sprain”, but otherwise, the neurological and orthopedic tests which were performed proved to be normal. After Martin’s pain persisted, his original physician (an orthopedist) performed a myelogram, but this test proved normal also, whereupon the plaintiff sought the advice of a neurosurgeon. Further tests, including a discogram, failed to indicate any disc abnormality. More than a year after Martin’s accident, he was finally discharged as being able to return to work. About eight months later, Martin saw yet another neurosurgeon, who found no evidence of a ruptured disc. Finally, about two years after the accident, the plaintiff saw another orthopedic surgeon, who diagnosed a ruptured disc at L-5, and surgery proved that finding to be correct. The trial court denied recovery, finding no causal relation between the accident and the disability. The court of appeal affirmed on the samé issue. 411 So.2d 1123 (La.App. 4th Cir.1982). The Supreme Court re *606 versed, finding that Martin had proved causation by a preponderance of the evidence.
There are several reasons why Zachry, supra, should not control the outcome of this case. First, very early during Martin’s treatment, there was good cause to suspect that his injury was not merely muscular, for although the plaintiff’s first orthopedist interpreted Martin’s tests as “normal”, that same doctor admitted later that the myelo-gram showed swelling of the nerve root at the L-5 level. Moreover, Martin’s first neurosurgeon expected the discogram to show a rupture at the L-5 level and was surprised when none appeared. This neurosurgeon also disputed the first orthopedist’s interpretation of Martin’s earliest myelo-gram, and informed him that it revealed a large dilated nerve root at the L-5 level which could have been caused by a disc bulge, or herniation. The plaintiff’s operating physician agreed with the neurosurgeon’s interpretation of the myelogram.
Thus, in Zachry, it was shown that the original diagnosis of back strain was not only questionable, but very probably false. From the beginning, there was good reason to assert a causal relation between the accident and the injured disc. Such was not the case here, and it has been shown that there is no good reason to doubt Dr. Ca-shio’s original diagnosis.
Furthermore, plaintiff Martin’s post-accident work record does not approach Robertson’s in rigor. After his accident, Martin held a supervisory position which required only occasional and light manual labor. Robertson’s history is far different, as we have shown.
In conclusion, we do not find Zachry controlling here, and being unable to discover manifest error in the trial court’s factual findings, we must affirm the judgment.
AFFIRMED.