635 So.2d 540 (1994)
Marilyn MITCHELL, Plaintiff-Appellant,
v.
ABBEVILLE GENERAL HOSPITAL, Defendant-Appellee.
No. 93-1146.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*541 Russell Karl Zaunbrecher, Crowley, for Marilyn Mitchell.
John A. Keller, Lafayette, for Abbeville General Hosp.
Before KNOLL, COOKS and WOODARD, JJ.
WOODARD, Judge.
This is a worker's compensation case. The issues on appeal are whether the reduction of plaintiff's temporary total disability benefits to supplemental earnings benefits was proper, and whether defendant is required to pay for a surgical procedure plaintiff claims is necessary as a result of her work-related accident.

FACTS
Plaintiff, Marilyn Mitchell, was employed by defendant, Abbeville General Hospital, as an LPN. On November 4, 1988, plaintiff slipped on some powder on the floor of a patient's room. Plaintiff fell to the ground and landed on her buttocks, in more or less a sitting position. Plaintiff was initially seen in the hospital emergency room, and was thereafter treated by several doctors for her injuries. Plaintiff was paid temporary total disability benefits (TTD) until November 8, 1990, when her benefits were reduced to supplemental earnings benefits (SEB) based on the medical evidence in her file and the recommendation of two of plaintiff's doctors that she return to work.
On February 21, 1992, plaintiff filed a petition with the Office of Worker's Compensation (OWC) claiming her TTD benefits were arbitrarily and capriciously reduced to SEB, and requesting judgment for all medical expenses. Specifically, plaintiff was seeking to have defendant ordered to pay for a surgical procedure recommended by Dr. Robert Rivet, a neurosurgeon who began treating plaintiff shortly before she filed her claim. Dr. Rivet diagnosed plaintiff as having occipital neuralgia, a condition which can cause continuing headaches. Dr. Rivet recommended *542 that plaintiff undergo an occipital neurectomy, which is a surgical procedure used to treat this condition by severing the occipital nerve.
A hearing was held May 29, 1992, and the administrative hearing officer dismissed plaintiff's claims, finding that (1) the reduction of plaintiff's benefits to SEB was proper, and (2) plaintiff failed to carry her burden of proving the occipital neuralgia was caused by her work related accident, or that the surgery recommended by Dr. Rivet was reasonable and necessary.
It is from this judgment that plaintiff appeals, asserting that the administrative hearing officer erred (1) in failing to relate the occipital neuralgia to the work related accident of November 4, 1988; (2) in finding the surgical procedure (occipital neurectomy) was not defendant's financial responsibility; (3) in finding the change from TTD to SEB in November 1990 was proper; and (4) in failing to find the change to SEB was arbitrary and capricious.

MEDICAL TREATMENT
An award of medical expenses to a compensation claimant is limited to those expenses shown to have been made necessary by the accident. Steven v. Liberty Mut. Ins. Co., 509 So.2d 720 (La.App. 3 Cir.1987). The plaintiff has the burden of establishing by a preponderance of the evidence the causal connection between his disability and the accident. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982).
The medical evidence presented at the hearing reveals that shortly after her accident, plaintiff visited Dr. Roland Miller, an orthopedic surgeon, with complaints of lower back pain. Dr. Miller diagnosed a contusion to the lower sacrum. Dr. Miller continued to treat plaintiff, and approximately one month after the accident, in December, 1988 plaintiff began complaining of neck pain and headaches. Dr. Miller felt the headaches and neck pain resulted from a sprain sustained in the accident.
In January, 1989, Dr. Miller referred plaintiff to Dr. Ricardo Leoni, a neurosurgeon. Plaintiff continued to suffer from the headaches and neck pain, which Dr. Leoni believed were the result of a cervical strain. In September, 1989, Dr. Miller referred plaintiff to Dr. James Domingue, a neurologist, who also believed plaintiff's pain was caused by a cervical sprain type of injury. On March 27, 1990, Dr. Domingue noticed some tenderness in plaintiff's left suboccipital area; however, when he administered an injection to the area, which normally provides relief to patients with occipital neuralgia, plaintiff claimed the injection only made the pain worse.
While plaintiff was being treated by Dr. Miller, Dr. Leoni, and Dr. Domingue, she sought treatment from a second orthopedic surgeon, Dr. John Cobb. Dr. Cobb tested plaintiff for a disc injury, but found none. On June 4, 1990, Dr. Cobb recommended plaintiff see Dr. Robert Rivet, another neurosurgeon, because he felt plaintiff's symptoms were compatible with occipital neuralgia.
Plaintiff began treatment with Dr. Rivet on February 11, 1991. Dr. Rivet gave plaintiff three separate injections similar to the one given by Dr. Domingue, however, this time the injections provided some relief to plaintiff. Her headaches were relieved for approximately a month at a time. Dr. Rivet testified that this indicated plaintiff probably had occipital neuralgia. After the third injection, Dr. Rivet recommended that plaintiff undergo an occipital neurectomy to permanently relieve the headaches.
The surgery is a relatively simple one that is likely to provide plaintiff with complete, or near complete, relief. Plaintiff wishes to undergo the surgery, however defendant refuses to pay for the surgical procedure, claiming plaintiff's medical condition was not caused by the work-related accident.
Medical experts may testify as to whether a condition was caused by a work-related accident; however, the ultimate determination of whether a plaintiff has proven causation is made by the courts and not by medical experts. Martin, supra. Causation is not necessarily a medical conclusion; the courts must apply legal tests to the facts of the case to achieve a "just and equitable result." Martin, 424 So.2d at 1005. One *543 such test is the legal presumption of causation which is set forth by the supreme court in Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982) as follows:
A plaintiff-employee's disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition.
Although the medical experts' opinions differ as to causation in this case, we find plaintiff is entitled to the presumption of causation because there is no evidence that plaintiff suffered any head and neck pain prior to the accident; the head and neck pain manifested itself shortly after the accident; and the pain has continued since that time, despite the treatment plaintiff has received from various medical experts.
This presumption of causation is not conclusive; the defendant may rebut it with sufficient contrary evidence. Hammond, supra. However, we find the defendant has failed to do so in this case.
In light of these considerations, we reverse the judgment of the OWC and find that plaintiff is entitled to undergo, at defendant's expense, the surgical procedure (occipital neurectomy) in an effort to obtain relief from her accident-related head and neck pain.

CHANGE IN BENEFIT STATUS
Plaintiff next claims the administrative hearing officer erred in finding the reduction of benefits from TTD to SEB in November, 1990 was proper.
Entitlement to worker's compensation benefits is based on the claimant's ability or inability to earn wages. Tassin v. Cigna Ins. Co., 583 So.2d 1222 (La.App. 3 Cir.1991). A claimant will not be entitled to temporary total disability (TTD) benefits unless he is unable to engage in any gainful occupation. La.R.S. 23:1221(1)(a). Supplemental earnings benefits (SEB) are proper where a claimant is able to work, but unable to earn wages equal to ninety percent or more of the wages earned at the time of injury. La.R.S. 23:1221(3)(a). If the claimant is not employed or is earning less than he is able to earn, the employer must show the claimant is physically capable of performing employment which is offered or available. Tassin, supra.
The administrative hearing officer found that the change in plaintiff's benefit status from TTD to SEB was proper. We find no error in this determination. The evidence reflects that, as of the date her benefits were reduced, plaintiff was capable of performing part-time work. Dr. Leoni recommended plaintiff return to work on March 7, 1989. On May 10, 1990, Dr. Domingue informed plaintiff that she should return to work for two to three days a week. Furthermore, in August, 1990, Dr. Domingue approved two job descriptions that were submitted by a vocational rehabilitation group as being suitable part-time work for plaintiff. Plaintiff was informed of these job openings, as well as several others in her field, but she failed to apply for any of them.
Because plaintiff was capable of working and there were appropriate jobs available at the time her TTD benefits were reduced to SEB, the reduction in benefits was proper. Plaintiff's argument that defendant was arbitrary and capricious in reducing benefits is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. Costs of this appeal are assessed one-half to plaintiff-appellant and one-half to defendant-appellee.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.